MELVIN RAWSON vs. MASSACHUSETTS OPERATING CO., INC.

Suffolk.    February 5, 1952. — April 3, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Negligence*, Theatre, Obnoxious person.

Evidence as to the nature and extent of an unchecked disturbance created in a moving picture and vaudeville theatre by a group of boys for one and one half hours during a performance warranted a finding that there was negligence on the part of the proprietor of the theatre toward a patron who sustained injuries when assaulted by one of the boys to whom the patron finally suggested that he "go home with the rest of them and let us enjoy the picture."

TORT.    Writ in the Superior Court dated April 6, 1948.

The action was tried before *Kirk*, J.

*F. I. Rose*, for the plaintiff.

*K. C. Parker*, for the defendant.

WILKINS, J.    The plaintiff, a patron in the Capitol Theatre on March 30, 1948, owned and operated by the defendant in Somerville, was assaulted by another patron, the defendant being allegedly negligent in failing to take proper precautions to prevent the occurrence.    The jury returned a verdict for the plaintiff, but the judge entered a verdict for the defendant under leave reserved, the plaintiff excepting.

The question is the application of a well settled principle of law.    The defendant theatre owner and operator, in common with other possessors of real estate open to the public for business purposes, owed a duty to a paying patron to use reasonable care to prevent injury to him by third persons whether their acts were accidental, negligent, or intentional.    Restatement: Torts, § 348.

The jury could have found these facts.    The plaintiff, thirty-three years of age, accompanied by his wife, took a seat a little below the center on the right side of the theatre

about 7:45 P.M. when the program started. There were first a motion picture, next vaudeville acts, and then another motion picture. During the first picture the plaintiff noticed "an awful lot of fuss and noise among the patrons" in the section where he was seated, especially in the row in front of him where there was a group of six or seven boys nineteen or twenty years of age, one of whom was DeFino, the assailant. For about forty-five minutes, all through the first picture, they were fooling and laughing, but "it was not too bad until they put on the acts." Then they became more boisterous. They were talking loudly enough to be heard "within a range of some rows." Four or five times patrons in back of the plaintiff yelled to them to be quiet. The vaudeville acts lasted about half an hour, during which the boys, including DeFino, were talking, laughing, yelling, and throwing popcorn toward the stage. "It was rowdyism." When the theatre was darkened for the second picture, the boys other than DeFino arose to leave. DeFino pulled down the nearest boy to make him stay. "He still wanted to go home and this fellow still hung onto him. They struggled all over the place up and down on the seats. It was terrific. This went on for a good two or three minutes." The plaintiff leaned over, touched DeFino on the shoulder, and said, "Why don't you go home with the rest of them and let us enjoy the picture?" DeFino answered, "Who are you calling a kid to?" and struck the plaintiff in the face with his fist, breaking the plaintiff's glasses and causing two facial cuts, one of which required six stitches and the other one. Both the plaintiff and his wife were surprised. Neither had any apprehension before he was struck that he was apt to be in a fight or hit by anyone. The first time that there was any show of force was a couple of minutes before when the boys were wrestling around. At no time were there ushers, attendants, or police officers at or near the vicinity except on one occasion during the vaudeville acts, about fifteen minutes before, when one big usher came down the center aisle and looked at these fellows "for about four or five seconds." When they quieted

down "for a second," he went back. DeFino was twenty-two years of age, five feet ten inches tall, and weighed one hundred fifty pounds.

There was testimony from the theatre manager, who had had the night in question off, that there should have been present the assistant manager and three ushers, who were supposed to be actively engaged in patrolling the theatre; that if there was a crowd of four or five sturdy fellows about eighteen to twenty years of age who were talking loudly, yelling, throwing things, pulling one another, and disturbing the patrons, it was up to the ushers, if they saw it, to do something about it; that the ushers, if really on the job and observant of this, would be obliged to take some correcting steps, one of which would be to warn the young men to stop, and if they did not, to arrange for them to go out, or be taken to some other part of the theatre where there would be police or someone directly watching them; and that if the ushers were on the job doing what they were supposed to do, and there was any disturbance, they would have taken one of these steps.

Having in mind the facts which we have outlined as to the nature and extent of the disturbance, in the opinion of a majority of the court the jury could find that the defendant was remiss during one hour and one half in failing to discover and stop the disorder; that the defendant should have known that if it did not take such action, it was to be reasonably anticipated that patrons might undertake to supply the omission; and that if that happened, the authors of the rowdyism might resent such unofficial interference with their misbehavior, and might even commit a cowardly assault in the dark upon a remonstrating patron. Cases of this sort present a wide variation in their facts. Those of our decisions more closely resembling the present case are *McFadden* v. *Bancroft Hotel Corp.* 313 Mass. 56, and *Fortier* v. *Hibernian Building Association of Boston Highlands,* 315 Mass. 446. See *Pfeifer* v. *Standard Gateway Theater, Inc.* 259 Wis. 333. In *Rich* v. *Boston Elevated Railway,* 316 Mass. 615, there were two small boys, nine to eleven years of age;

who could have been found to have been playing tag in a crowd for not more than eight minutes.

The plaintiff's exceptions are sustained, the verdict entered under leave reserved is set aside, and the verdict returned by the jury is to stand.

*So ordered.*