Edgab J. Nathan, Jk., J.
This is an action by Joseph F. Shank to recover damages for personal injuries alleged to have been sustained solely as a result of the negligence of the defendant.
At about 4:25 a.m., on April 4, 1959, plaintiff and a female companion entered the defendant’s restaurant, which does not serve any alcoholic beverages, located at 1011 Third Avenue in the Borough of Manhattan, seated themselves at the counter and ordered coffee. The restaurant contained a horseshoe-shaped counter with 31 stools, served by a manager, a cook, a counter-girl and a porter. There were approximately 25 other patrons present when plaintiff and his companion entered.
At about 4:00 a.m., prior to the entry of plaintiff and his companion, five men entered the restaurant. One of those men immediately became noisy and belligerent, annoying and addressing customers in the restaurant in the most vile language. The manager requested this man to desist. At this point he asked for a glass of water and, upon receiving it, he “ drop kicked” it against the kitchen door causing water and pieces of glass to spray over a wide area. The manager thereupon instructed the cook to call the police. However, the “hoodlum” then apologized to the manager and paid him for the broken glass, whereupon the manager cancelled the call to the police. Approximately 10 minutes thereafter the “ hoodlum ” resumed berating customers in a vile manner and, in addition, put his hand on one patron’s shoulder. The manager made no effort to intervene. At this point, approximately 20 to 25 minutes after the “ hoodlum ” and his companions has arrived, plaintiff and his woman companion entered the restaurant.
Almost immediately the “ hoodlum ” approached plaintiff and began insulting the woman by calling her filthy names. Plaintiff turned to the “ hoodlum ” and said, “ Please don’t bother me. I am with my girl friend.” After cursing her again, the “ hoodlum ” went back down to the other end of the counter. At this point, two men named McCann and Gunn entered the restaurant *837 and joined the “hoodlum”. This was 5 to 10 minutes after plaintiff had entered the restaurant. Shortly thereafter the “ hoodlum ” raced out the side door of the restaurant and back in the front door. He began swinging his fists at customers and hit several of them, including plaintiff’s woman companion. He then hit plaintiff, who was also hit by McCann and Gunn, and knocked to the floor. Thereupon Gunn picked up a heavy metal counter stool and “inserted” the shaft into plaintiff’s head with great force. This assault caused a severe fracture of plaintiff’s skull. A large hole was opened in his head and blood and “white stuff ” poured out onto the floor. As the attack commenced, defendant’s manager yelled, “ Call the police! ’ ’. After the arrival of the police plaintiff was taken to Beth David Hospital and did not recall anything that had transpired for three days thereafter.
It is well settled that a restaurant or innkeeper is not an absolute insurer of the safety of his patrons while they are on his premises. All that is required of him is that he use reasonable care to avoid an assault or other injury to his patrons (see Smith v. White Tower Management Corp., 129 N. Y. S. 2d 545). However, in the instant case, it is clear that the defendant’s manager failed to discharge this obligation and the defendant was therefore negligent.
The uncontroverted testimony establishes that, for a period of over 20 minutes prior to plaintiff’s entry, the unidentified “ hoodlum ” had been creating a disturbance in the restaurant. While it might be said that the manager had no duty to eject him solely because of his vile and abusive language, when he 1 ‘ drop kicked ’ ’ the glass of water it became abundantly clear that the 16 hoodlum ’ ’ constituted a source of physical danger to defendant’s patrons. Indeed, the manager recognized this when he instructed the cook to telephone the police. The court is of the opinion that the “ hoodlum’s ” gesture of apologizing and paying for the glass did not justify the manager in canceling his call to the police, since at this point it was entirely foreseeable that the “hoodlum” might commit additional violent physical acts. Moreover, for a period of more than 25 minutes this “ hoodlum ” created a series of disturbances in a restaurant in which he was not even a patron. The record is clear that he never ordered any food or beverage and under those circumstances the defendant’s manager had even less reason than usual to tolerate his presence. It cannot be disputed that, had the manager called the police when the “ hoodlum ” “ drop kicked” the water glass, they would have had over 20 minutes to respond prior to the assault on plaintiff. *838 Therefore, the manager’s negligence was the competent producing cause of the plaintiff’s injuries. Moreover, there is not a scintilla of evidence in the record to suggest that plaintiff was in any way guilty of contributory negligence.
. Defendant’s contention, that the “hoodlum’s” temporary egress through the side door prior to his re-entry through the front door approximately 15 seconds later broke the chain of causation and relieved defendant of any responsibility for its prior negligence, is totally without merit. The record shows that this entire sequence of events was one related incident and it is beyond dispute that the ‘ ‘ hoodlum ’ ’ chose the path he did because it was the easiest way to reach plaintiff’s side of the counter. This is buttressed by the fact that his companions, Gunn and McCann, remained in the restaurant.
At the time of this occurrence, plaintiff was 42 years old and unmarried. He was employed as a piano player, earning $100 a week. It was conceded that as a result of this assault he lost $2,100 in wages, sustained medical expenses of $900, and a hospital bill of over $600. He was hospitalized for 16 days and confined to his home for approximately six weeks thereafter. In addition, he sustained severe permanent injuries, a great deal of pain and suffering and depressed permanent scars plainly visible on his forehead and through his hair.
This bare statement of facts does not adequately portray the seriousness and extent of plaintiff’s injuries, nor their permanent effects upon him. For example, the hospital record discloses, among other significant details, this his brain was exposed and there was loss of brain fluid.
Under the cireumstances, the court is of the opinion that the sum of $60,000 will fairly compensate plaintiff for the injuries he sustained and plaintiff is awarded judgment in that amount. Let judgment be entered accordingly.