146 So.2d 260 (1962)
Mattie Lee EDWARDS, Plaintiff-Appellant,
v.
GREAT AMERICAN INSURANCE COMPANY et al., Defendants-Appellees.
No. 9780.
Court of Appeal of Louisiana, Second Circuit.
October 26, 1962.
*261 R. Clyde Lawton, Jr., Shreveport, for appellant.
Morgan, Baker, Skeels & Coleman, Shreveport, for defendant-appellee Great American Ins. Co.
Luther S. Montgomery, Shreveport, for defendants-appellees Charles E. Brown and Maurice F. Bullard.
Before GLADNEY, AYRES and BOLIN, JJ.
AYRES, Judge.
This is an action in tort wherein plaintiff, as natural tutrix of Andrew Harris Edwards, a 15-year-old minor, seeks to recover damages sustained by the minor when struck by a blast from a shotgun. Made defendants are Maurice F. Bullard, who fired the shot, Charles E. Brown, Bullard's employer, and Brown's public liability insurer. Following trial, there was judgment rejecting plaintiff's demands and she has appealed.
The record establishes these pertinent facts. Brown is the owner of the Hollywood Tourist Courts, a motel for colored people, situated at 4240 Hollywood Avenue in the City of Shreveport. Bullard, who lives in a residence to the rear of the courts, has been manager of the courts for approximately 10 years. He is charged with the responsibility of managing and protecting the property.
The incident complained of occurred during the night of August 30, 1961. About 10:25 p. m., Lonnie Meredith and Ida Mae Meredith, who live nearby, observed, from their residence, two men in a vacant lot adjacent to the east side of the tourist courts. From appearances, as the Merediths viewed and appreciated them, the men were engaged in removing a window screen from the rear of one of the cabins. Information that someone was attempting to break into one of the rooms was communicated by telephone by the Merediths to the office of the tourist courts. This information was relayed to Bullard who then seized a shotgun and repaired to his back yard where he saw a man attempting to remove a window screen at the rear of one of the cabins. In the darkness of the night, and from a distance of approximately 65 feet, Bullard could not tell whether there was one or two of the parties endeavoring to enter the cabin, or what tools, if any, were being used. Bullard fired one shell loaded with No. 6 squirrel shot at the man, after which he saw someone run into the vacant lot, which was overgrown with grass and weeds about knee high. Bullard returned to his residence and phoned the police. A search by him and the police followed, but no one was found.
Andrew Harris Edwards, who, at the time of the occurrence, was 14 years of age and, at the time of trial, was five feet, nine inches tall, testified that he and a companion, Larry Young, were walking through a vacant lot near the tourist courts, and, on stopping to light a cigarette, were fired upon and Edwards was shot. Edwards' testimony, corroborated by that of Larry Young, is to the further effect that they were not armed, and that after Edwards was shot Young ran away but afterwards returned and dragged Edwards from the scene to a tree where they hid during the search made by the officers.
*262 After the officers had left the scene, Young carried Edwards on his shoulder to the latter's residence. During this evacuation the youths avoided being seen or contacted by anyone or by the police. On reaching his home, Edwards' mother telephoned the police and then carried him to the Confederate Memorial Medical Center where he remained for a period of three days.
The youths were unable to satisfactorily explain their presence on the vacant lot to the rear of the tourist courts, across which there were no paths or walkways.
The record establishes the additional facts that on numerous, recent occasions window screens of the motel had been torn off and the rooms broken into. Music boxes in the cabins had been torn off the walls and money taken from them. Although the particular room which the youths were attempting to enter was occupied, the record does not disclose Bullard knew that fact.
From a preponderance of the evidence, no conclusion could be reached other than that the youths were attempting to burglarize the tourist courts at the time one of them was shot. Under these circumstances, the defendants admit the shooting, but seek to avoid liability on the ground that the youths were prowlers or intruders with the intent to harm the guests of the tourist courts, if need be, in their attempt at burglary. In view of the surrounding facts and circumstances, notably apprehension and fear, brought about by the frequent appearances of prowlers and the actual commission of burglary in the immediate past, the conclusion is inescapable that Bullard acted as a reasonable and prudent man in the act taken to repel the invasion of the courts.
The general rule is that innkeepers or keepers of lodging houses or restaurants must protect their guests, while in their places of business, against injury by third persons, whether such third persons are guests or strangers, where it is within their power to do so. Such responsibility may be entrusted to employees or other subordinates. Although the keepers of inns, lodging houses, or restaurants are not the insurers of the safety of their guests, they are under an obligation to exercise, at least, ordinary or reasonable care to keep them from injury.
43 C.J.S. Innkeepers § 22, p. 1173. See, also: De Hart v. Travelers Ins. Co., La. App. Orleans, 1942, 10 So.2d 597 (writs denied); Matranga v. Travelers Ins. Co., La. App. Orleans, 1952, 55 So.2d 633; Miller v. Derusa, La.App. 1st Cir., 1955, 77 So.2d 748.
In view of the facts and circumstances shown to have existed in this case, may it be said that Bullard's action in shooting Edwards was justified? The question for determination is, therefore, whether Bullard reasonably believed the intruder was likely to cause death or serious bodily harm to his guests unless expelled, and if the intrusion could be prevented only by the use of the force applied.
In Smith v. Delery, 238 La. 180, 114 So. 2d 857, a newsboy who, in the course of making his early-morning deliveries, attempted to retrieve his dog from defendant's premises was shot and seriously injured by the defendant who believed he was a prowler attempting to enter defendant's dwelling or to molest defendant, his wife, and children. Liability was denied on the ground that defendant's belief was reasonable despite the actual innocence of his victim.
We recognize the correctness of the rule that resort to the use of a dangerous weapon in order to repel a supposed attack upon a defendant's person or upon persons to whom he owes a duty to protect cannot be countenanced as justifiable save in exceptional cases where the actor's fear of the danger is not only genuine but is founded upon facts which would be likely to produce similar emotions in men of reasonable prudence. Patterson v. Kuntz, La.App. Orleans, 1946, 28 So.2d 278.
*263 The trial court, in our opinion, in giving consideration to the hour of the night; the character of the neighborhood; that intruders had broken into the tourist courts on several occasions, both frequently and recently; that Edwards appeared to be attempting to enter a room of the tourist courts through a window; and that the room was occupied at the time, properly and correctly held that Bullard believed, and had good ground and reasons to believe, that Edwards was likely to cause death or serious bodily harm to his guests in the tourist courts. It would also appear reasonable for Bullard to assume, as he did, that the intruders were armed and that the intrusion could be prevented only by the use of the force applied. Such apprehension appears to have been reasonable under the facts and circumstances disclosed by the record.
In Smith v. Delery, supra, the court, under a comparable state of facts, stated:
"The record unmistakably shows that the actual appearance of prowlers, peeping toms and intruders and repeated rumors of such appearances, extending over a period of more than one year, had created a general fear and apprehension among defendant and his neighbors, which was probably heightened by the fact that most of the men (except the defendant) held travelling jobs, and during their frequent absences their young wives and minor children looked mainly to the defendant for protection; that on several occasions the men had joined in patrolling the neighborhood in an effort to detect and apprehend a prowler; that various complaints were filed with the police, whoin response to those complaintslikewise searched the neighborhood for any intruders; that the landlord owning the apartment building fronting on the back of defendant's house had been asked to install a floodlight, but refused to do so, whereupon defendant illuminated his rear yard and driveway to discourage any prowlers; that on at least two occasions various neighbors detected a prowler and chased him, the last of these incidents occurring only three days prior to the shooting.
"We think that in view of the general state of apprehension and fear prevailing at the time and the specific occurrences taking place immediately before the shooting, which will be discussed in detail later herein, the trial judge and the Court of Appeal were correct in finding that defendant had acted as a reasonable and prudent man in the belief that he and his family were in immediate danger."
For the aforesaid reasons, we find no manifest error in the judgment appealed, and, accordingly, it is affirmed at plaintiff-appellant's cost.
Affirmed.