Argued March 4, affirmed July 16, 1969

ROSENSTEIL, *Appellant, v.* LISDAS ET UX, *Respondents.*

456 P2d 61

*David K. Mitchelson,* Beaverton, argued the cause for appellant. With him on the brief were Wallace A. Leaf, Beaverton, and Leo Levenson, Portland.

*Carrell F. Bradley,* Hillsboro, argued the cause for respondents. On the brief were Schwenn, Bradley & Batchelor and Robert W. Redding, Hillsboro.

Before PERRY, Chief Justice, and McALLISTER, O'CONNELL, DENECKE and LANGTRY, Justices.

O'CONNELL, J.

This is an action to recover damages for personal injuries suffered by plaintiff as a result of his efforts to break up an affray which occurred in defendants' restaurant. The trial court directed a verdict for defendants. Plaintiff appeals.

At about 3:00 a.m. on August 13, 1966 the plaintiff and a companion stopped to eat at defendants' all-night restaurant in the small town of Cornelius. The defendants' restaurant was adjacent to a bar which was also operated by defendants. The bar had closed at 2:30. The restaurant was crowded with people some of whom had come from defendants' bar and other bars in the town.

Soon after plaintiff entered the restaurant a man came running into the restaurant pursued by two others later identified as David and Jeff Hale. Plaintiff described the scene as follows:

"A. We were sitting there eating ham and eggs and all of a sudden the door burst open and this fellow came in screaming. It wasn't screaming—it was an actual screech and he was pretty well beat up. His eyes were closed and this other fellow immediately came in the door right after him and he more or less tackled him, and he wrapped

himself around him and they both fell to the floor, and the fellow that tackled the other fellow put his arms and legs around him and held him, and the other fellow was in there by then and started kicking him in the head.

"I didn't believe it at first. I sat there watching him kicking him in the head. The whole place was silent except for the thump, thump, thump. The fellow on the floor finally quit screaming. I guess he was knocked out. He lay still and the fellow standing up still kept kicking him. I just couldn't see it, so I jumped up and grabbed the fellow from behind that was doing the kicking and held his arms. And a few seconds after that several people, I guess they were customers drug the other fellow off of the floor that was holding the other one, and the fellow I was holding, he started saying, 'don't hit me. Don't hit me. I don't want to go to jail. Please don't hit me.' So, I figured I had already become involved enough so I let him go and in the meantime the other fellow had been ejected out the front door and when I did let him go, he went out what I took to be the back door. * * * * * That fellow was still unconscious and people were milling around and I went over and his hand was stepped on by people milling around. I started to stoop over and help the man and I was stabbed in the back. * * * I guess they came in the back door, * * * * * it was the fellow that walked out the back door and the fellow that had been forced out the front. The two that jumped this other fellow. * * * * * [O]ne grabbed me and started kicking and fighting in desperation more than anything. * * * He had a knife. * * * * * Someone grabbed me around the neck and things really went wild then and we ended up back through the kitchen door and it turned out to be his brother that was—he was holding me and the other fellow tried to stab me in the stomach and I bent way over and put my arms out and he stabbed me in the left arm. And

then I went back through the kitchen and towards the counter there and he stabbed me in the other arm. The whole place was just really wild then and I guess I ran toward the front door and got out to my pick-up which was parked right in front of the front door * * *."

Plaintiff contends that defendants owed him a duty to have employed precautions so that any disorderly person entering the restaurant would be subject to reasonable restraint. The complaint alleges that defendants were negligent in allowing on the restaurant premises David and Jeff Hale, persons known to defendants as having violent and disorderly propensities, in allowing disorderly conduct on the premises and in failing to provide employees to maintain order.

The only personnel working in the restaurant at the time of the foray were a cook, a dishwasher and a waitress, all women.

There was evidence of previous disturbances in the restaurant. The city policeman testified that there had been a previous violent altercation with the Hale brothers in the same restaurant about a year before. A deputy sheriff testified that he was called to the restaurant "numerous times for different drunks, fights." The waitress testified that during the thirteen days she had worked immediately previous to the night in question, there had been "a few 'hassles'." The waitress testified that the Hale brothers, the first victim, two other men and a woman had been customers in the cafe and had left "ten to fifteen minutes" before their eventful return.

There was no telephone on the restaurant premises by which the police could be called. There was a pay phone in a booth across the street, and the police could be signalled for help by flipping an electric switch

which turned the light off in the cafe's street sign. There was no evidence that anyone switched off the light on the night in question. The cook testified that after the first altercation she took a dime and started for the back door en route to the pay phone across the street to call the police, but met David Hale returning to the restaurant. He "had a knife in his hand and had it opened and he grabbed me by the throat and shoved me against the machine that cuts french fries and he told me to get back in and stay there or he would cut my head off." She complied.

Plaintiff contends that this evidence was sufficient to entitle him to have the case submitted to the jury.

■ The owner of a restaurant, amusement place, tavern, or inn owes his business guests a duty of ordinary reasonable care to protect them from injury at the hands of other patrons while on the premises. *Peck v. Gerber,* 154 Or 126, 59 P2d 675, 106 ALR 996 (1936).

We hold that the evidence in this case is not sufficient to permit the jury to find that defendants negligently caused plaintiff's injury. It would be unreasonable for the jury to find that defendants could have anticipated and should have been prepared for the contingency that two men crazed with drink, wildly chasing their quarry, would burst into the restaurant, criminally assault their victim and thus draw into the fray a sympathetic bystander in the restaurant. There is no evidence that anything previously occurring in the restaurant would have given defendants reason to believe that such a wild affray would erupt from the street.

■■ Even if a restaurant owner has the duty under some circumstances to employ personnel who are capable of keeping order and thus protect his patrons

from injury resulting from the foreseeable conduct of his patrons, he is not required to employ such personnel for the contingency that outsiders will elect to use the restaurant rather than the street as their battleground. The fact that the Hale brothers had previously been in the restaurant gave defendants' employees no warning that they would stir up trouble and suddenly return to burst into the restaurant. It is the responsibility of the public police to quell such disturbances whether they occur on the street or in a restaurant. And even where previously violence has swept in from the streets, we do not think that it should be the duty of a businessman operating a restaurant to risk his own life or employ others to risk theirs in order to protect bystanders who happen to be in the restaurant rather than on the street. That is a function which he should be able to leave to government police.

The cases cited in the dissenting opinion are not apposite. In those cases the owner of the premises was in a position to prevent harm to his patrons by quelling a disturbance which was in its incipient stage in his presence.[1] In the case at bar nothing had oc-

---

[1] See, e.g., Moone v. Smith, 6 Ga App 649, 65 SE 712 (1904) (quarrel on defendant's premises had continued ten or fifteen minutes prior to plaintiff's injury without any effort by defendant to call police or intervene); Molloy v. Coletti, 114 Misc 177, 186 NYS 730 (1920) (defendant had notice of continued offensive, boisterous and unlawful conduct of other patrons and made no effort to protect the plaintiff); Shank v. Riker Restaurants Associates, Inc., 28 Misc2d 835, 216 NYS2d 118, *affirmed* 222 NYS 2d 683 (1961) (plaintiff's attacker had misbehaved for twenty-five minute period prior to attack on plaintiff); Connolly v. The Nicollet Hotel, 254 Minn 373, 95 NW2d 657, 74 ALR2d 1227 (1959) (plaintiff injured by object falling from hotel window during course of disorderly convention). Edwards v. Great American Insurance Co., 146 So2d 260 (La Ct App 1962) is not in point. It denies a trespasser recovery for injuries incurred when the defendant fired a shotgun at him.

curred in defendant's presence to give warning that his patrons were in danger. As we have already indicated, the fact that previous disturbances had occurred in the restaurant would not impose upon defendants the duty to prepare against disturbances which originated in conflict elsewhere and which result in harm to defendant's patrons simply because the victim without any warning to defendants chose to use defendants' restaurant as a place of refuge.

The judgment is affirmed.

LANGTRY, J. (Pro Tempore), dissenting.

It should be noted that the evidence, in addition to that recited in the majority opinion, showed that the defendants seldom visited the operation of their restaurant during the night, but that written notification was given to them by employees about altercations occurring in the restaurant at night.

There was evidence from which a jury reasonably could draw the inference that the Hale brothers frequently were violent and dangerous. The city police officer testified that on the occasion of the Hale brothers' previous fight in this same restaurant they assaulted him from front and rear, trying to disarm him. Three officers at that time arrested David, but Jeff escaped. With reference to David the officer said that he did not try to arrest him until help came, "* * * you would have a rough time taking him by yourself. * * * You would have to know the man." These were the brothers that the defendants knowingly allowed to frequent their restaurant. In this restaurant there was no practical method provided for calling police and there were no personnel able to maintain order.

On defendants' motion to take the case from the

fact finder, the evidence is to be viewed in the light most favorable to the plaintiff. *Warren et ux v. Parsons et ux,* 224 Or 605, 356 P2d 953 (1960); *Johnson v. Kolovos,* 224 Or 266, 355 P2d 1115 (1960); *Brown v. Spokane, P. & S. Ry. Co.,* 248 Or 110, 431 P2d 817 (1967).

Viewed in this light, I believe the plaintiff's case should have been submitted to the jury, with proper instructions.

Plaintiff's specifications of negligence included allegations that defendants allowed David and Jeff Hale, persons known to the defendant to have violent and disorderly propensities, on the premises; that they allowed disorderly conduct and the assault described, and that they failed to provide employees to maintain order.

A duty which a restaurant, amusement place, tavern, or inn operator owes his business guests is that of ordinary reasonable care to protect them from injury at the hands of third persons while they are guests. *Peck v. Gerber,* 154 Or 126, 59 P2d 675, 106 ALR 996 (1936); *Moone v. Smith,* 6 Ga App 649, 65 SE 712 (1909); *Edwards v. Great American Insurance Co.,* 146 So2d 260 (La Ct App 1962); *Connolly v. The Nicollet Hotel,* 254 Minn 373, 95 NW2d 657, 74 ALR2d 1227 (1959); *Shank v. Riker Restaurants Associates, Inc.,* 28 Misc2d 835, 216 NYS2d 118, *affirmed* 15 AD2d 458, 222 NYS 2d 683 (Sup Ct 1961); *Molloy v. Coletti,* 114 Misc 177, 186 NYS 730 (Sup Ct 1920); *Rommel v. Schambacher,* 120 Pa 579, 11 A 779 (1887); *Miller v. Staton,* 58 Wash2d 879, 365 P2d 333 (1961); Annotations, 70 ALR2d 628 (1960); 106 ALR 1003 (1937); and 42 ALR 1088 (1926).

These authorities hold that evidence supporting

allegations of negligence similar to those alleged here suffice for recovery of damages by the plaintiff. Some such cases refer to the duty only in a situation where one customer injures another, but others specifically include a customer or any other third person injuring a customer. *Edwards v. Great American Insurance Co.; Moone v. Smith; Molloy v. Coletti; Shank v. Riker Restaurants Associates, Inc.; Connolly v. The Nicollet Hotel,* supra. See also Comment in 70 ALR2d at page 645.

The Annotation in 106 ALR 1003, following the report of the leading Oregon case, *Peck v. Gerber,* supra, comments that the degree of care required fluctuates with each case; consequently, proprietors serving liquor are required to exercise "somewhat greater care" than those who don't. The Annotation in 70 ALR2d 628 following the report of *Priewe v. Bartz,* 249 Minn 488, 83 NW2d 116, 70 ALR2d 621 (1957), collects more recent cases. These agree with the Comment in 106 ALR. See also *Connolly v. The Nicollet Hotel,* supra, syllabus 5 at page 374 of 254 Minn.

In the instant case, the reason for the rule which puts a greater duty upon the bar operator than the restaurant operator applies against the defendants, for the evidence shows that the defendants, in the same building and as a part of the same operation, separated only by a partition with connecting service openings, operated a bar in which they had to observe the legally required closure at 2:30 a.m. There were several other bars in the area with the same restriction. Customers from the bars regularly gathered in the defendants' restaurant after this closure because it was the only one in town which remained open for business. Operators in the place of defendants reasonably could be expected to foresee under the

evidence produced that at 3:00 a.m., this crowded restaurant would have disorderly customers.

The Annotation in 70 ALR2d at page 657 comments:

> "* * * [T]he courts attach considerable weight to the fact that [the] proprietor of the establishment where the injury occurred had some notice of the possibility of harm from prior actions of the person causing the injury, either on the occasion of the injury, or on previous occasions."

In *Coca v. Arceo*, 71 NM 186, 376 P2d 970 (1962), a case which relied upon *Peck v. Gerber*, supra, the court said:

> "* * * The rule does not require a long and continued course of conduct to find that the proprietor had knowledge of the violent disposition of the other patron—all that is necessary is that there be a sequence of conduct sufficiently long to enable the proprietor to act for the patron's safety. It is not necessary that the proprietor know of a history of a series of offenses against the peace * * *." 71 NM at 190.

*Nevin v. Carlasco*, 139 Mont 512, 515, 365 P2d 637 (1961), reviews the authorities, including *Peck v. Gerber*, supra, which it refers to as a leading case and holds the duty of a proprietor to protect his customers from injury exists where one or more of these, among other circumstances, are shown by the evidence:

> "(1) [When he] * * * allowed a person on the premises who has a known propensity for fighting.
>
> "* * *
>
> "(5) [He] * * * failed to provide a staff adequate to police the premises.
>
> "(6) [He] * * * tolerated disorderly conditions."

Essentially the same tests are set up by the Washington Supreme Court in *Miller v. Staton,* supra, where cases, including *Peck v. Gerber,* supra, are cited in support of each test. To the same effect see syllabi 2, 4, 5 and 6 in *Connolly v. The Nicollet Hotel,* 254 Minn at 373, 374, supra, in support of each test.

Based upon the facts and the foregoing authorities, I believe that granting the motion for directed verdict in the case at bar was error unless plaintiff's voluntary injection of himself into the beating of the victim by the Hale brothers was a superseding cause, or unless the fact that the brothers and their victim had left the restaurant where they had been customers some 10 to 15 minutes before and then returned broke the chain of causation. On the basis of precedents cited above, I think it is immaterial whether the Hales were, at the time of the assault, customers or non-customers if the jury were to find that defendants allowed them to frequent the premises and knew they had violent propensities. In *Shank v. Riker Restaurants Associates, Inc.,* supra, an assailant had come into a restaurant and was abusive toward customers. The court held that it did not break the chain of causation as to the proprietor's negligence in not calling the police simply because the assailant went out of the restaurant a few seconds before he came back in and assaulted the plaintiff. The court held that if the sequence of events makes them into one related incident it is sufficient to create a fact question as to causation. Applying this reasoning to the facts in the case at bar with reference to the absence from the restaurant of the Hale brothers for 10 to 15 minutes, after they had been its patrons, I think that the ques-

tion of causation was one of fact. Cf. *Hills v. Mc-Gillvrey*, 240 Or 476, 482, 402 P2d 722 (1965):

> "* * * When reasonable persons can differ upon the point, the question of 'substantial' or 'proximate' cause is for the jury * * *."

Will the fact that plaintiff volunteered, that is, tried to rescue the victim from the beating, prevent him from recovery if he was otherwise entitled to recover? The answer is found in the logic of Mr. Justice Cardozo in *Wagner v. International Ry. Co.*, 232 NY 176, 133 NE 437, 19 ALR 1 (1921):

> "Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperilled victim; it is a wrong also to his rescuer. * * * [Citing many cases] The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man * * *." 232 NY at 180.

See Annotation following this case in 19 ALR 4 (1922), Annotation, 158 ALR 189 (1945), and 38 Am Jur 738, Negligence § 80. In the instant case it would be for the jury to determine whether plaintiff's action was foolhardy or "wanton."

Defendants in their brief press upon the court the decision in *Boss v. Prince's Drive-Ins*, 401 SW2d 140 (Tex Civ App 1966). There plaintiff was a customer of a drive-in restaurant who intervened in a quarrel which appeared about to erupt into a fight between some licensees (noncustomers) upon the drive-in premises. Plaintiff was beaten by one of them. He attempted to hold the proprietor of the drive-in for

negligence in not calling the police, because the licensees had been around the premises and involved in the argument for about three-quarters of an hour before the plaintiff was injured. The report of that case does not indicate that there was evidence, as there was in the case at bar, about previous altercations, or that the assailants were known to the operator to be violent, or about adequacy of personnel to protect customers.

In *Rawson v. Massachusetts Operating Co., Inc.,* 328 Mass 558, 105 NE2d 220, 29 ALR2d 907 (1952), the plaintiff sought damages for injuries from the proprietor of a theatre where he was a customer when, in seats in front of him, one young man was physically restraining and struggling with another causing plaintiff to intervene. He was injured by the assailant youth. The court said:

"* * * [T]hat the defendant should have known that if it did not take such action [to control disorder in the theatre], it was to be reasonably anticipated that patrons might undertake to supply the omission; and that if that happened, the authors of the rowdyism might resent such unofficial interference with their misbehavior, and might even commit a cowardly assault in the dark upon a remonstrating patron * * *." 328 Mass at 560.

Where there is evidence as strong as that produced in this case, evidence which, when tested by the rule favoring the plaintiff on a motion for directed verdict, could leave reasonable minds in doubt, it is almost uniformly held that the questions of negligence and causation are for the jury. *Hill v. Merrick,* 147 Or 244, 31 P2d 663 (1934): *Marshall v. Nugent,* 222 F2d 604, 58 ALR2d 251 (First Cir 1955); *Miller v. Staton,* supra; *Coca v. Arceo,* supra; *Reilley v. 180*

*Club, Inc.,* 14 NJ Super 420, 82 A2d 210 (1951). In *Marshall v. Nugent,* supra, the court said:

> "When an issue of proximate cause arises in a borderline case, as not infrequently happens, we leave it to the jury with appropriate instructions. We do this because it is deemed wise to obtain the judgment of the jury, reflecting as it does the earthy viewpoint of the common man—the prevalent sense of the community—as to whether the causal relation between the negligent act and the plaintiff's harm which in fact was a consequence of the tortious act is sufficiently close to make it just and expedient to hold the defendant answerable in damages. That is what the courts have in mind when they say the question of proximate causation is one of fact for the jury. [Citing cases] It is similar to the issue of negligence, which is left to the jury as an issue of fact. Even where on the evidence, the facts are undisputed, if fairminded men might honestly and reasonably draw contrary inferences as to whether the facts do or do not establish negligence, the court leaves such issue to the determination of the jury * * *." 222 F2d at 611.

It is my opinion that the evidence and the law applicable are such that the case should have been submitted to the jury with proper instructions. Therefore, I would reverse the order of the trial court and remand the case for a new trial.