Emily GERMAN–BEY, Plaintiff-Appellee,

v.

NATIONAL RAILROAD PASSENGER CORPORATION and Richmond, Fredericksburg and Potomac Railroad Company, Defendants-Appellants.

No. 837, Docket 82–7717.

United States Court of Appeals,
Second Circuit.

Argued Feb. 23, 1983.

Decided March 28, 1983.

Hyman Hillenbrand, New York City (Bleakley, Platt, Remsen, Millham & Curran, New York City, of counsel), for appellants.

Juan Kip Lenoir, New York City (Greene, Bogan, Lenoir, Jones, & Gutzman, New York City, of counsel), for appellee.

Before PIERCE, WINTER, and PRATT, Circuit Judges.

WINTER, Circuit Judge:

Defendants, National Railroad Passenger Corporation and Richmond, Fredericksburg and Potomac Railroad Company (collectively "Amtrak"), appeal from a final judgment entered by Judge Duffy in the Southern District of New York, 546 F.Supp. 253, after a bench trial in this diversity action. He awarded Emily German-Bey $50,000 in damages for personal injuries resulting from Amtrak's negligence in failing to prevent an assault upon her by another passenger. We reverse on the grounds that Amtrak had no reason to anticipate, and, therefore, to take preventive measures against, such an assault.

The plaintiff, Emily German-Bey, boarded Amtrak's Silver Meteor in New York City's Pennsylvania Station with her two young children for a trip to Charleston, South Carolina. Taking their assigned reserved seats, the mother and son sat on one side of the aisle, while the daughter occupied the window seat across the aisle.

At Washington, D.C., Robert Sweadner boarded the train, after having purchased a ticket but without an assigned seat. Sweadner asked Harry Baughn, the Amtrak conductor, whether he could board without a reservation. Alston Scott, a coach attendant, located a seat for Sweadner in the rear of the car in which German-Bey was sitting. While Sweadner did not appear intoxicated to Baughn, Scott thought otherwise from the smell of alcohol on Sweadner's breath and his slurred speech. Nevertheless, Scott also stated that Sweadner was sitting peacefully in his seat when Scott passed through the car on the way to the dining coach.

In addition to his prior consumption of alcohol, Sweadner had brought a pint flask of vodka with him on the train. Between the time the train left Washington and the time it left Alexandria, Virginia, or less than half an hour, he apparently consumed the entire contents of the bottle. He then made his way up the aisle and sat down in the empty seat next to German-Bey's daughter. He mumbled something to her and then got up and returned to his original seat. German-Bey, alarmed by Sweadner's strange behavior and glazed look, squeezed her daughter into her own seat. Shortly afterward, Sweadner charged up the aisle, cursing and shouting racial epithets, and slashed German-Bey on her face and hand with a knife. No train personnel had been in the car since the train left Alexandria.

About 20 minutes later, at Fredericksburg, Virginia, Sweadner was arrested. The police noted his intoxication in their arrest report, and Railroad personnel found the empty vodka bottle and the knife in the rear seat Sweadner had been occupying.

Judge Duffy found Amtrak negligent for allowing Sweadner to board the train in an intoxicated condition and for failing to monitor Sweadner's activities while he was on the train. He awarded German-Bey $50,000 in damages. Amtrak's principal contention is that there is no evidence that Sweadner appeared dangerous, potentially dangerous, or was even unruly at any time before the attack, and, therefore, that it was not negligent in failing to prevent acts which it had no reason to foresee. We agree.

Under New York law,[1] a carrier is generally not liable to its passengers for the misconduct of fellow passengers unless it anticipated or, in the exercise of reasonable care, ought to have anticipated the likelihood of injury. 17 N.Y.Jur.2d, Carriers § 484 (1981). Without some reason to expect dangerous conduct from Sweadner, therefore, Amtrak was not negligent for failing to prevent it.

Prior to the assault, Sweadner gave no indication that he might become disorderly, and there is no evidence to support the district court's finding that Amtrak "knew that [Sweadner] could become dangerous to himself or others." All of the eyewitnesses to the episode testified that Sweadner was quite peaceable until his sudden attack on German-Bey. Even German-Bey's own observations, which were not communicated to Amtrak employees, would not justify an apprehension of an assault, much less with a knife. Moreover, Sweadner's intoxication appears to have increased measurably after boarding the train. This was unknown to Amtrak's personnel since no one saw him swilling down vodka in the rear of the car. The conclusion that the railroad or its employees had reason to know of Sweadner's dangerous propensities simply has no basis in the record.

The mere fact that Amtrak's employees allowed Sweadner to board the train in an intoxicated state is insufficient, without more, to render the carrier liable for injuries inflicted by an assault on another passenger. *Putnam v. Broadway & Seventh Avenue R. Co.,* 55 N.Y. 108, 113, 116–117 (1875). Ostensibly peaceable intoxication does not put a carrier on notice of the possibility of physical danger to other passengers. The consumption of alcohol before and during travel by rail is not unusual and, unless some reason beyond the smell of alcohol on the breath and slurred speech exists to believe that a particular inebriated passenger poses a threat to the safety of others, a carrier is not liable for resultant injuries. *Wachser v. Interborough Rapid Transit Co.,* 69 Misc. 346, 125 N.Y.S. 767 (1910); 17 N.Y.Jur.2d Carriers § 488 (1981). There was no such reason in this case.

The judgment below is reversed and dismissed.

---

1. The district court, using the conflicts rules of the forum state, determined that a New York state court would apply New York law to this action. Neither party challenges this ruling.