**John SILVA, et al., Plaintiffs, Appellees,**

v.

**SHOWCASE CINEMAS CONCESSIONS OF DEDHAM, INC., National Amusements, Inc., Defendant, Appellant.**

No. 83–1924.

United States Court of Appeals,
First Circuit.

Argued May 10, 1984.

Decided June 14, 1984.

Certiorari Denied Oct. 9, 1984.
See 105 S.Ct. 251.

Edward W. Moses, Providence, R.I., with whom Harry W. Asquith, and Asquith, Merolla, Anderson, Ryan & Wiley, Providence, R.I., were on brief, for appellant.

Raymond A. LaFazia, Providence, R.I., with whom Gunning, LaFazia & Gnys, Inc., and John D. Lynch, Warwick, R.I., were on brief, for appellees. .

Before COFFIN, BOWNES and BREYER, Circuit Judges.

BREYER, Circuit Judge.

The defendant in this diversity case, a movie theater, appeals a jury award of damages to the plaintiffs for the wrongful death of their son, John Silva, Jr. Essentially, the jury found that the theater had breached its duty to Silva, "a paying patron[,] to use reasonable care to prevent injury to him by third persons whether their acts were accidental, negligent, or intentional." *Rawson v. Massachusetts Operating Co.*, 328 Mass. 558, 558, 105 N.E.2d 220, 220 (1952); *Restatement (Second) of Torts* § 344 & comment f (1965) (proprietor may have duty to police premises and thus afford reasonable protection). The parties agree that the law of Massachusetts (the place of injury) governs. The defendant theater argues that, under Massachusetts law, the evidence does not support the verdict, particularly in respect to the causal connection between negligence and injury or the foreseeability of the attack.

Viewing the evidence, as we must, in the light most favorable to plaintiffs, *deMars v. Equitable Life Assurance Society of the United States*, 610 F.2d 55, 57 (1st Cir. 1979), the jury could have found the following key facts among others. On Christmas Day, 1979, Silva went to the Showcase Cin-

ema with his brother and two friends to see "Quadrophenia," a film depicting violence between British Mods and Rockers. In the theater they were disturbed by three men and a woman, dressed in somewhat tattered clothing, sitting nearby, singing, yelling, and banging on the seats. Silva's group, along with other patrons, asked the raucous group to keep quiet. The group responded with words, gestures, and profanity. Some patrons moved away, annoyed by the noise and by vomit on one of the seats. Silva and his friends remained. The boisterous behavior continued throughout the film, but no usher or other theater employee intervened or, indeed, even appeared inside the auditorium. After the film, one of the troublemakers gestured at Silva's group. Both groups went out through a door behind the screen into the theater's parking lot just in back, at which point one of the three men stabbed and killed Silva. The jury could also have found that the theater (including the parking lot) had been the scene of numerous past acts of vandalism, theft, a kidnapping, and even an incident in the theater lobby in which a patron held a knife to the theater manager's throat. The theater typically used ushers to control boisterous behavior; it hired security guards when needed to stop potential rowdiness; and it had several traffic policemen stationed in front of the theater on the night in question.

The facts of this case bear a striking resemblance to those of *Rawson v. Massachusetts Operating Co., supra.* In *Rawson,* a group of theater patrons acted in a boisterous, rowdy manner throughout the show. An usher appeared only once to look at the group for a few seconds and to quiet them momentarily. Another patron said to one of the rowdies, "Why don't you go home with the rest of them and let us enjoy the picture?," at which point the rowdy hit him in the face. In allowing recovery against the theater, the Supreme Judicial Court stated that the jury could have found that the defendant theater

> was remiss during one hour and one half in failing to discover and stop the disorder; that the defendant should have

known that if it did not take such action, it was to be reasonably anticipated that patrons might undertake to supply the omission; and that if that happened, the authors of the rowdyism might resent such unofficial interference with their misbehavior, and might even commit a cowardly assault in the dark upon a remonstrating patron.

*Id.* 328 Mass. at 560, 105 N.E.2d at 221.

■ Although the question is a very close one, we, like the *Rawson* court, conclude that a jury could reasonably have believed that an attack was foreseeable if the auditorium was not adequately patrolled and that, had there been a show of authority, the parking lot attack would not have taken place. The jury could have reasoned that the show of authority itself would have cowed the troublemaking group; or it might have believed that an usher keeping an eye on the group as it left, ready to call for help to the policemen in front of the theater, would have made the difference. We are not prepared to say that a jury would be unreasonable in either belief.

The cases appellant cites (with one exception) are from jurisdictions other than Massachusetts, and, in any event, their fact patterns are distinguishable. *See Twin City Amusement Co. v. Salater,* 237 Ark. 206, 372 S.W.2d 224, 226 (1963) ("Nothing in the evidence suggests ... that more servants could have prevented the affray ...."); *Ellis v. Safeway Stores, Inc.,* 410 A.2d 1381 (D.C.1979) (attack in supermarket not foreseeable); *Taylor v. Hocker,* 101 Ill.App.3d 639, 57 Ill.Dec. 112, 428 N.E.2d 662 (1981) (property crimes did not make parking lot assault foreseeable); *Hawkins v. Maine & New Hampshire Theaters Co.,* 132 Me. 1, 164 A. 628 (1933) (injury caused by child shooting BB's at balloons in theater not foreseeable); *Hart v. Hercules Theatre Corp.,* 258 A.D. 537, 17 N.Y.S.2d 441 (attack in ladies room not foreseeable and not reasonable consequence of absence of matron there or of usher in hall), *leave to appeal denied,* 259 A.D. 817, 19 N.Y. S.2d 771 (1940); *Gustaveson v. Gregg,* 655

P.2d 693 (Utah 1982) (known animosity between two bowling leagues did not make assault foreseeable).

*Goggin v. New State Ballroom,* 355 Mass. 718, 247 N.E.2d 350 (1969), the one Massachusetts case cited by appellant, involves couples bumping in a dance hall and resembles neither *Rawson* nor the present case. Here, as the parties agree, the theater owner had a duty to take reasonable steps to forestall reasonably foreseeable harm flowing from even the intentional acts of its patrons. Here, the jury could find from the film, the audience, and the circumstances that violence was in the air, that the theater did not take reasonable steps to prevent it, and that this failure foreseeably led to tragedy. Consequently, the trial court acted within its lawful powers in denying the directed verdict and judgment n.o.v. for defendant. The record makes clear that it denied a new trial for precisely the same reasons that it denied the directed verdict. And the record adequately supports that denial. *Valm v. Hercules Fish Products, Inc.,* 701 F.2d 235, 237 (1st Cir.1983) (new trial warranted only when "the jury's verdict was so clearly against the weight of the evidence as to constitute a manifest miscarriage of justice.") (quoting *Hubbard v. Faros Fisheries, Inc.,* 626 F.2d 196, 200 (1st Cir.1980)).

■ Finally, appellant claims that the district judge ought to have allowed it to introduce evidence that Silva's assailant was convicted of manslaughter. The judge gave several reasons for refusing to admit the evidence:

> One, it is certainly not relevant whether the man was convicted or not convicted. Two, the plaintiffs are willing to stipulate it was a criminal act. Three, [defendant's counsel] says all he wants it for is to establish it was a criminal act. Four, that means he has accomplished his purpose. Five, there is no need for the conviction. Therefore, I sustain the objection.

Appellant argues that the fact of conviction would have shown an *intentional* act, which, it believes, would be less foreseea-

ble. But nothing in the record suggests that the stabbing was accidental; and the stipulation that the act was criminal should have made defendant's point. The balance of probative value and potential prejudice under Fed.R.Evid. 403 is one to be struck by the district court, *Staniewicz v. Beecham, Inc.,* 687 F.2d 526, 530 (1st Cir.1982); *United States v. Barletta,* 652 F.2d 218, 220 (1st Cir.1981), and here that court acted well within its powers.

The judgment of the district court is *Affirmed.*