**Jose MAYSONET, Plaintiff–Appellant,**

**v.**

**KFC, NATIONAL MANAGEMENT COMPANY, d/b/a Kentucky Fried Chicken, Defendant–Appellee.**

**No. 801, Docket 89–7572.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 14, 1990.

Decided June 29, 1990.

Peter R. Shipman, Bronx, N.Y. (Ernest J. Codella, Bronx, New York City, of counsel), submitted a brief for plaintiff-appellant.

Eric Portuguese, New York City (Steven B. Prystowsky, Saul Wilensky, Lester, Schwab, Katz & Dwyer, New York City, of counsel), for defendant-appellee.

Before CARDAMONE, WINTER and ALTIMARI, Circuit Judges.

CARDAMONE, Circuit Judge:

Late one May night appellant Jose Maysonet entered a Kentucky Fried Chicken restaurant in the South Bronx, New York. He had been there before and had often seen loiterers panhandling patrons. This night was no different. When Maysonet entered there were 20–25 customers present, including a panhandler who was bothering and harassing customers, asking them for money and attracting attention by "crazy laughing." After Maysonet had waited on line for 15 minutes, the panhandler approached him and asked for money. When Maysonet refused the man stabbed him in the abdomen. The police and ambulance came and took him to the hospital where he eventually recovered, but the assailant was never found.

Appellant thereafter sued the KFC, National Management Company, d/b/a Kentucky Fried Chicken (Kentucky Fried Chicken), for its alleged negligence and sought damages for his injuries. The United States District Court for the Southern District of New York (Patterson, J.) at a June 6, 1989 hearing granted summary judgment to Kentucky Fried Chicken, dismissing appellant's cause of action on the grounds that the attack was not reasonably foreseeable. Appellant appeals the order of dismissal. We affirm.

## BACKGROUND

At the time of the attack the restaurant was staffed with three teen-aged female employees busily occupied serving food, none of whom saw the stabbing. Peter Donelan, defendant's Area Supervisor—who routinely visited the 641 East Tremont Avenue restaurant once a day—testified in a deposition that there had been no other incidents or assaults in this restaurant prior to this attack. He further stated that loiterers were in the restaurant several times a week, and when one came on the premises, the manager on duty would usually ask him to leave. If the loiterer did not leave, the police would be called to remove him.

Maysonet commenced his action in the Supreme Court of the State of New York, Bronx County, and it was later removed to the Southern District of New York. The complaint alleges that Kentucky Fried Chicken was negligent in failing to exercise due care to protect Maysonet, its business invitee, from harm. Specifically, it asserts that the action of his assailant was reasonably foreseeable and that Kentucky Fried Chicken failed to exercise due care to prevent the attack.

Kentucky Fried Chicken moved for summary judgment contending that there were no genuine issues of material fact and that, absent a history of prior criminal activity on the premises, a criminal act by a third person is not foreseeable. Further, defendant alleged that a sudden attack by a third person who did not exhibit any violent propensities before the attack is an unforeseeable action. Thus, Kentucky Fried Chicken contended—and the district court agreed—that it had no duty to protect Maysonet from this attack.

## DISCUSSION

Review of a grant of summary judgment focuses on whether the district court properly concluded that there was "no genuine issue as to any material fact[s]" thereby entitling the moving party to "judgment as a matter of law." Fed.R.Civ.P. 56(c). "Summary judgment is appropriate when, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

■ Under New York law a proprietor is not liable for the intervening criminal acts of another unless such acts were reasonably foreseeable. *See Danielenko v. Kinney Rent A Car, Inc.*, 57 N.Y.2d 198, 204, 455 N.Y.S.2d 555, 557, 441 N.E.2d 1073,

1075 (1982); *Nallan v. Helmsley–Spear, Inc.*, 50 N.Y.2d 507, 518–19, 429 N.Y.S.2d 606, 613, 407 N.E.2d 451, 457 (1980). No duty of care arises "unless it is shown that he either knows or has reason to know from past experience 'that there is a likelihood of conduct on the part of third persons ... which is likely to endanger the safety of the visitor.' " *Nallan*, 50 N.Y.2d at 519, 429 N.Y.S.2d at 613, 407 N.E.2d at 458 (quoting Restatement (Second) of Torts § 344 comment f).

■ The New York State Court of Appeals has recognized that a history of criminal activities in a building can give rise to a duty on the part of the building's owner to take reasonable steps to minimize the danger to persons visiting it. *Id.* at 519–20, 429 N.Y.S.2d at 613–14, 407 N.E.2d at 457–59; *see Miller v. New York*, 62 N.Y.2d 506, 513–14, 478 N.Y.S.2d 829, 833, 467 N.E.2d 493, 497 (1984). In *Nallan*, for example, a record of 107 reported crimes in defendant's building, including ten violent attacks, was a sufficient basis upon which a rational jury could find that a criminal incident was foreseeable. *Id.* at 519–20, 429 N.Y.S.2d 606, 407 N.E.2d 451.

■ In light of the absence of prior criminal incidents or assaults on the premises of the restaurant in this case, the district court properly concluded that the history of the premises could not give rise to a duty of care to protect patrons from criminal attacks. *See Adiutori v. Rabovsky Academy of Dance, Inc.*, 149 A.D.2d 637, 638, 540 N.Y.S.2d 457, 458–59 (2d Dep't 1989); *Ianelli v. Powers*, 114 A.D.2d 157, 161–63, 498 N.Y.S.2d 377, 380–81 (2d Dep't 1986); *see also Tarter v. Schildkraut*, 151 A.D.2d 414, 415, 542 N.Y.S.2d 626, 627 (1st Dep't), *appeal denied*, 74 N.Y.2d 616, 549 N.Y.S.2d 961, 549 N.E.2d 152 (1989).

Inquiry does not end because the premises had been free of prior crimes. The criminal act of a third person may also be reasonably foreseeable—thereby casting the owner of the premises in liability towards invitees—if the third person acts in such a manner that an ordinarily prudent person would believe he poses a risk of harm. *See D'Amico v. Christie*, 71 N.Y.2d 76, 85, 524 N.Y.S.2d 1, 5, 518 N.E.2d 896, 899 (1987); *Huyler v. Rose*, 88 A.D.2d 755, 755, 451 N.Y.S.2d 478, 479 (4th Dep't 1982). "Landowners in general have a duty to act in a reasonable manner to prevent harm to those on their property.... In particular, they have a duty to control the conduct of third persons on their premises when they have the opportunity to control such persons and are reasonably aware of the need for such control...." *D'Amico*, 71 N.Y.2d at 85, 524 N.Y.S.2d at 5, 518 N.E.2d at 899–90. Hence, the remaining question in the case at hand is whether the assailant's conduct prior to the stabbing was such that Kentucky Fried Chicken should have been reasonably aware that its patrons were at risk from his conduct.

Appellant depicts the assailant as a harasser, a trespasser, and a disturber of the peace from the minute he walked in and asserts that he should therefore have been immediately evicted by the owner. Kentucky Fried Chicken responds that the stabbing of Maysonet was sudden and unexpected and, as a matter of law, unforseeable.

Turning to the case law in this area, it has been held that a noisy and belligerent patron who had "drop kicked" a glass of water into a restaurant's kitchen and called plaintiff's companion filthy names prior to assaulting the plaintiff exhibited conduct sufficient to put the restaurant owner on notice that the patron was violent. *Shank v. Riker Restaurants Assoc.*, 28 Misc.2d 835, 216 N.Y.S.2d 118, (N.Y.Cty.Sup.Ct.), *aff'd*, 15 A.D.2d 458, 222 N.Y.S.2d 683 (1st Dep't 1961); *see also DeGelorm v. Pelc*, 52 Misc.2d 336, 275 N.Y.S.2d 446 (Onondaga Cty.Ct.1966) (assailant threatening patron with beer bottle and striking plaintiff's brother in the face before attacking plaintiff held sufficient to give defendant cause to anticipate assaultive acts by this particular assailant).

But a restaurant owner is not required to anticipate the sudden and unexpected act. In *German–Bay v. National Railroad Passenger Corp.*, 703 F.2d 54 (2d Cir.1983), we found as a matter of New York law that seating an intoxicated passenger on a

train did not put the defendant railroad on notice of the risk that the intoxicated passenger—who was calm and subdued when he boarded the train with a ticket—would become violent and assault a fellow passenger with a knife. There we held that mere intoxication of a person is insufficient to put an owner on notice of a risk that the person will commit a violent act on its premises. *Id.* at 55. Again, in *Campbell v. Step/Lind Restaurant Corp.*, 143 A.D.2d 111, 531 N.Y.S.2d 576 (2d Dep't 1988), plaintiff and another patron were buying one another drinks at a bar when suddenly plaintiff's drinking companion shot him. Similarly, in *Silver v. Sheraton–Smithtown Inn*, 121 A.D.2d 711, 504 N.Y.S.2d 56 (2d Dep't 1986) "[a] sudden and unexpected altercation in a cocktail lounge of an inn between the plaintiff and another patron resulted in plaintiff's being pushed into a shelf [injuring his hand and arm]." *Id.* at 711, 504 N.Y.S.2d 56. The attacks in both of these cases were held not to be reasonably anticipated.

In the present case Maysonet testified that for 15 minutes prior to the attack his assailant, who was not a patron, was "crazy laughing," "harassing" and "bothering" customers. But no evidence was presented that this behavior went any further. It was neither threatening nor verbally or physically assaultive. Full discovery was had in this case and it failed to reveal that the assailant touched or threatened anyone prior to stabbing appellant. Further, none of the defendant's employees observed assailant's behavior; no other witnesses were produced to testify respecting it. In short, there is no proof that the panhandler displayed any violent propensities prior to the attack. Therefore, no jury could reasonably find that Kentucky Fried Chicken was on notice of a threat posed by this assailant based solely on Maysonet's testimony.

We recognize that in life the unexpected often happens. But to fasten liability on a premises' owner, the conduct of third parties should be of a kind reasonably to be anticipated, one that can be guarded against. Measured against this test no liability attaches to Kentucky Fried Chicken. The panhandler's conduct up to the time he stabbed appellant was of the sort regularly seen nowadays in the streets and spaces where the public congregates in New York City and elsewhere. It may have been bothersome and annoying, but bothersome or annoying actions unaccompanied by assaultive or abusive conduct are simply too common an occurrence to alert a property owner that such person may commit a violent act. Further, Kentucky Fried Chicken's practice of promptly removing loiterers gives appellant no comfort since it evidences less a fear for its customers' safety than it does a desire to prevent overcrowding its premises and a desire to maintain a pleasant atmosphere.

Consequently, the district court correctly concluded that assailant's conduct was not of such nature as to put defendant restaurant on notice that its patrons were at risk. Since there were no genuine questions of material fact regarding foreseeability, summary judgment dismissing the complaint was properly granted.

Judgment affirmed.

ALTIMARI, Circuit Judge, dissenting:

I agree with the majority's view that the dispositive issue on this appeal "is whether the assailant's conduct prior to the stabbing was such that Kentucky Fried Chicken should have been reasonably aware that its patrons were at risk from his conduct." However, I disagree with the majority's conclusion that, as a matter of law, no inference of foreseeable harm can be drawn from the conduct exhibited by the assailant. I believe that a reasonable trier of fact could find in favor of Maysonet and, therefore, summary judgment dismissing the complaint was inappropriate. For the reasons discussed below, I respectfully dissent.

Under New York law, the criminal act of a third person may be foreseeable if the third person acts in such a manner that an ordinarily prudent person would believe he poses a risk of harm. *See D'Amico v. Christie*, 71 N.Y.2d 76, 85, 524 N.Y.S.2d 1, 5, 518 N.E.2d 896, 899 (1987); *Huyler v. Rose*, 88 A.D.2d 755, 755, 451 N.Y.S.2d 478,

479 (4th Dep't 1982). Thus, as the majority states, the dispositive issue is whether the assailant's conduct was such that it was foreseeable to Kentucky Fried Chicken that its patrons were at risk. The majority, however, concludes that the stabbing of Maysonet was so sudden and unexpected that, as a matter of law, it was not foreseeable. *See Campbell v. Step/Lind Restaurant Corp.,* 143 A.D.2d 111, 531 N.Y.S.2d 576 (2d Dep't 1988); *Silver v. Sheraton–Smithtown Inn,* 121 A.D.2d 711, 504 N.Y. S.2d 56 (2d Dep't 1986). I disagree.

Each of the cases relied upon in reaching the majority's conclusion is factually distinguishable from the present action. Both *Campbell* and *Silver* involved assailants whose actions, up until the exact moment of the attacks, were inoffensive and non-threatening. The assailants exhibited no violent, menacing or intimidating behavior prior to the assaults. *See Campbell,* 143 A.D.2d at 111, 531 N.Y.S.2d at 577; *Silver,* 121 A.D.2d at 711, 504 N.Y.S.2d at 57. In addition, the assailants were themselves customers of the establishments in which the attacks occurred. For example, in *Campbell,* the plaintiff and another patron were buying one another drinks at a bar when suddenly plaintiff's drinking companion shot him. *Campbell,* 143 A.D.2d at 111, 531 N.Y.S.2d at 577. Similarly, in *Silver,* "[a] sudden and unexpected altercation in a cocktail lounge of an inn between the plaintiff and another patron resulted in plaintiff's being pushed into a shelf...." *Silver,* 121 A.D.2d at 711, 504 N.Y.S.2d at 57. Such attacks could not possibly have been anticipated.

Maysonet testified that for fifteen minutes prior to the attack his assailant was "crazy laughing" and "harassing" and "bothering" customers. Further, the assailant was not a patron of the restaurant. Clearly, the facts in the present case are distinguishable from cases where the assailants' actions prior to the attack provided no indication, whatsoever, of a potential threat.

If this was the first instance where a loiterer had entered the Kentucky Fried Chicken restaurant, it might be a closer case. However, Kentucky Fried Chicken's area supervisor testified that loiterers were frequently on the premises and routinely asked to leave. According to the supervisor's testimony, failure to heed a request to leave the restaurant resulted in a call to the police. The record does not reveal whether, on the evening of the attack on Maysonet, the assailant was asked to leave the restaurant or whether the police were called. Based on these facts, it can reasonably be argued that the practice of removing loiterers was intended to protect Kentucky Fried Chicken's customers from harm and, therefore, was a further indication that the attack on Maysonet was foreseeable. What other reason could there be for a long standing policy to "call the police."

It is clear that a jury could reasonably find that Kentucky Fried Chicken was on notice of the presence of an unstable and potentially violent individual. Such a finding would impose a duty on the restaurant to take action to protect its patrons. *See, e.g., Shank v. Riker Restaurants Ass'n, Inc.,* 28 Misc.2d 835, 837–38, 216 N.Y.S.2d 118, 120–21 (Sup.Ct.N.Y.County), *aff'd,* 15 A.D.2d 458, 222 N.Y.S.2d 683 (1st Dep't 1961); *De Gelorm v. Pelc,* 52 Misc.2d 336, 337, 275 N.Y.S.2d 446, 447–48 (Onondaga County Ct.1966). Moreover, a jury could reasonably conclude, based on Kentucky Fried Chicken's history of ejecting loiterers, that it was aware of the need and had the ability to protect its patrons from harm but, in this case, failed to provide such protection. *See D'Amico,* 71 N.Y.2d at 85, 524 N.Y.S.2d at 5, 518 N.E.2d at 899.

Thus, the issue of the foreseeability of the attack on Maysonet was not appropriate for resolution on a motion for summary judgment. The judgment of the district court, granting Kentucky Fried Chicken's motion for summary judgment and dismissing the complaint, should be reversed and the case remanded for trial on the merits. Accordingly, I dissent.