TRACY LUISI *vs.* FOODMASTER SUPERMARKETS, INC.,
& another.[1]

No. 98-P-2013.

Suffolk. September 13, 2000. - December 14, 2000.

Present: BROWN, PORADA, & LAURENCE, JJ.

*Negligence,* Grocery store, Foreseeability of harm, Duty to prevent harm,
Proximate cause. *Landlord and Tenant,* Landlord's liability to third person.

In a negligence action, the judge correctly determined on the record of mo-
tions for summary judgment that no reasonable security measures taken by
a supermarket and its landlord could, in the circumstances, have prevented
a sudden and unprovoked attack by a mentally ill person on the plaintiff, a
patron, and the judge correctly ordered summary judgment in favor of the
defendants. [578-579]

In a negligence action brought against a commercial landlord for an assault on
the plaintiff occurring on the leased premises, summary judgment was cor-
rectly ordered in favor of the defendant where the plaintiff was not injured
in a common area under the landlord's control. [579, 579-580]

In a negligence action, disputed issues of material fact remained with respect
to whether the defendant supermarket reasonably should have foreseen that
a display of knives without protective covers created a dangerous situation
affording the opportunity of a person committing an unprovoked knife at-
tack on a patron [580], and, as well, with respect to whether the patron's
injuries, suffered in such an attack, were proximately caused by the breach
of any duty owed to the patron by the defendant [580]: summary judgment
for the defendant was incorrectly entered.

CIVIL ACTION commenced in the Superior Court Department on
May 23, 1996.

The case was heard by *Nonnie S. Burnes,* J., on motions for
summary judgment.

*Michael J. Traft* (*Robert Duzan* with him) for the plaintiff.

*Theodore F. Riordan* (*Deborah Bates Riordan* with him) for
Foodmaster Supermarkets, Inc.

*Ronald M. Davids* for New England Development, Inc.

---

[1]New England Development, Inc.

PORADA, J. While shopping at the Foodmaster Supermarket in the Bunker Hill Mall in the Charlestown section of Boston in the middle of the afternoon, the plaintiff was repeatedly stabbed without warning or provocation by Diane Huggins. Huggins was indicted for mayhem, armed assault with intent to murder, and assault and battery with a dangerous weapon upon the plaintiff. She was subsequently found not criminally responsible by reason of mental illness by a Superior Court judge in a jury-waived trial.

The plaintiff brought this action in the Superior Court against Foodmaster Supermarkets, Inc. (Foodmaster), and its landlord, New England Development, Inc. (NED), alleging that Foodmaster and NED were negligent in failing to provide adequate security to protect their patrons and in displaying knives without protective covers for sale. Both defendants filed motions for summary judgment. A Superior Court judge allowed the motions on the grounds that Huggins's unprovoked attack upon the plaintiff was neither reasonably foreseeable nor preventable by Foodmaster and NED. The plaintiff appeals arguing that Huggins's unprovoked attack on the plaintiff was both a reasonably foreseeable risk of the defendants' failure to provide adequate security and a foreseeable consequence of Foodmaster's negligence in displaying knives without protective covers for sale. We affirm the judgment in favor of NED and affirm partial summary judgment in favor of Foodmaster based on the claim of inadequate security, but reverse that portion of the judgment in favor of Foodmaster based on the store's alleged negligence in displaying uncovered knives for sale.

We first address the plaintiff's argument that reasonable security measures would have prevented the attack. Although NED employed a security guard to patrol the mall's parking lot and common areas between 4:00 P.M. and 11:00 P.M., there is no dispute that, at the time of the attack, neither Foodmaster nor NED had a security guard, uniformed or otherwise, on duty.[2] The plaintiff argues that the presence of a security guard was warranted based on the incidence of crimes at the mall and the supermarket and that a security guard would have deterred the attack. There is no question that a possessor of land open to the public for business owes a duty to all persons lawfully on its premises "to use reasonable care to prevent injury to [them] by

---

[2]There is also no dispute that Foodmaster did not have surveillance cameras in place at the time of the attack.

third persons whether their acts are accidental, negligent, or intentional." *Carey* v. *New Yorker of Worcester, Inc.*, 355 Mass. 450, 452 (1969). *Flood* v. *Southland Corp.*, 416 Mass. 62, 72 (1993). However, a possessor of land is not a guarantor of the safety of persons lawfully on its premises. The duty owed is limited to guarding against reasonably foreseeable risks of harm. *Flood* v. *Southland Corp.*, 416 Mass. at 72-73. In deciding on the foreseeability of the risk of injury, all the circumstances are examined. *Id.* at 72. Ordinarily, this is a question of fact for the jury, but there are some instances where a judge may determine that, in the circumstances presented, the harm that befell the plaintiff was not reasonably foreseeable or preventable. *Glick* v. *Prince Italian Foods of Saugus, Inc.*, 25 Mass. App. Ct. 901, 902-903 (1987).

Here the plaintiff, in opposition to the defendants' motions, submitted affidavits of two Foodmaster employees stating that they had witnessed fist fights between customers in the store, the beating of the store manager by a mentally ill person, and a threat to one of the Foodmaster cashiers when the cashier refused to cash a check. As additional materials in opposition to the defendants' motions, the plaintiff also submitted a number of newspaper clippings and police reports relating to armed robberies, property crimes, and assaults which had occurred in the parking lot of the mall and in the vicinity of the mall. While the previous occurrence of criminal acts on or near the defendants' premises is a circumstance to consider, it is not necessarily determinative of the outcome in this case.

As the Supreme Judicial Court, in *Whittaker* v. *Saraceno*, 418 Mass. 196, 200 (1994), pointed out, criminal conduct in our daily life is omnipresent and, thus, even a violent attack is foreseeable. Nevertheless, we have not placed the "burden of all harm caused by random violent criminal conduct on the owner of the property where the harmful act occurred, without proof that the landowner knew or had reason to know of a threat to the safety of persons lawfully on the premises against which the landowner could have taken reasonable preventive steps." *Ibid.* See *Carey* v. *New Yorker of Worcester, Inc.*, 355 Mass. at 452 (bar owner held liable for injuries inflicted upon a patron who without warning was shot by another customer whom the bar owner's employees knew to be drunk and a troublemaker but whom they nevertheless took no steps to remove from the premises or any other preventive measures);

*Sharpe* v. *Peter Pan Bus Lines, Inc.*, 401 Mass. 788, 792-794 (1988) (common carrier held liable for wrongful death of passenger who without warning or provocation was stabbed repeatedly by another person, where there was evidence that the bus terminal was in a high crime area and had been the scene of a number of personal injury crimes, and where the presence of an uniformed security guard would have acted as a deterrent to this crime); *Flood* v. *Southland Corp.*, 416 Mass. at 72-73 (where store employee knew that teenagers gathered outside the store were "high" and one of them had a knife, but no particular security precautions were taken, the store was potentially liable in negligence for injuries inflicted upon one of the teenagers when stabbed by the teenager with a knife); *Fund* v. *Hotel Lenox of Boston, Inc.*, 418 Mass. 191, 193-195 (1994) (where hotel was in a high crime area and was aware of numerous crimes within the hotel and at nearby hotels but failed to take certain measures to protect its guests from criminal acts of third persons, the risk of a violent attack upon one of its guests was within the foreseeable risk of harm resulting from that failure); *Whittaker* v. *Saraceno*, 418 Mass. at 200 (where a commercial landlord had no knowledge of any attacks on tenants in the common area of its office building, the landlord had no reason to know of any threat to the safety of its tenants that required the landlord to take preventive steps to protect its tenants); *Griffiths* v. *Campbell*, 425 Mass. 31, 35 (1997) (a residential landlord was not liable for the wrongful death of a Boston police officer who was murdered in a drug raid on one of the apartments leased by the landlord to a tenant where the homicide was not within the foreseeable risk of harm based simply on the plaintiff's assertion that the landlord should have suspected drug activity within that apartment).

The issue presented by the circumstances in this case is simply whether the presence of a security guard, uniformed or otherwise, would have prevented the sudden, unprovoked attack that resulted in the plaintiff's injuries. The plaintiff argues that it would have because, once the Boston police officers who were present in the parking lot of the mall at the time of the attack entered the store, the plaintiff dropped her knife. However, even though Huggins eventually surrendered to the police officers, the record indicates that Huggins did not initially respond to police requests to drop the knife, but continued to strike out with it. We therefore conclude that, in light of Huggins's prof-

fered mental condition, the absence of any evidence indicating that her behavior before the attack gave any warning signals to the defendants and their agents of any potential threat to the safety of their customers, cf. *Flood* v. *Southland Corp.*, 416 Mass. at 73, and the absence of any evidence that the presence of a security officer, uniformed or otherwise, would have posed a deterrent to her attack, cf. *Sharpe* v. *Peter Pan Bus Lines, Inc.*, 401 Mass. at 793-794, no reasonable preventive measures taken by the defendants could have prevented the sudden and unprovoked attack on the plaintiff. Summary judgment was appropriately entered in favor of both defendants based upon the plaintiff's claim of inadequate security.

We also add that a further ground exists for exempting NED from liability under this theory. We note that NED was a commercial landlord. As such, NED had "a duty to take reasonable precautions to protect persons lawfully *in common areas* of rental property against reasonably foreseeable risks" (emphasis supplied). *Whittaker* v. *Saraceno*, 418 Mass. at 198. Here, the plaintiff's injuries did not occur in a common area but within the premises leased to Foodmaster. Absent any evidence that NED was required by the terms of its lease with Foodmaster to provide security to it or that the area in which the harmful act occurred was under its control, NED could not be held liable for the plaintiff's injuries. *Id.* at 198 & n.2.

The plaintiff also argues that her injuries were within the foreseeable risk of harm resulting from the display of knives[3] without protective covers in the Foodmaster store. Whether the knife used by Huggins to attack the plaintiff came from this display or whether there was any such display is disputed by the parties. However, the existence of this disputed fact does not necessarily preclude the allowance of summary judgment if, as the defendants argue, the unprovoked attack by Huggins on the plaintiff was not within the foreseeable risk of harm arising from a display of uncovered knives. See *Hogan* v. *Riemer*, 35 Mass. App. Ct. 360, 364 (1993). The defendants argue that the injury reasonably anticipated from a display of knives without protective covers is that a customer might cut himself on one of the knives in examining it. While this may be so, it is equally plausible, given the history of the incidence of crimes at the mall and within the store itself, that Foodmaster should have foreseen that a display of knives without protective covers cre-

---

[3]The record contains evidence that the knives were steak knives.

ated a dangerous situation affording the opportunity for a third person to commit the type of crime or tort that occurred in this case. *Bellows* v. *Worcester Storage Co.*, 297 Mass. 188, 195 (1937). When the harm should have been foreseen, "[t]he way in which the stabbing occurred and the fact that the plaintiff might be the one to be harmed need not have been reasonably foreseeable." *Flood* v. *Southland Corp.*, 416 Mass. at 73. See *Carey* v. *New Yorker of Worcester, Inc.*, 355 Mass. at 452, 454; *Lawrence* v. *Kamco, Inc.*, 8 Mass. App. Ct. 854, 858 (1979); *Pollard* v. *Powers*, 50 Mass. App. Ct. 515, 519 (2000).

Based on the materials presented to the motion judge, we therefore conclude that there is a reasonable difference of opinion as to the foreseeability of the risk of harm posed by the defendant Foodmaster's display of uncovered knives. We conclude, however, that summary judgment was appropriately granted in favor of the defendant NED on this theory for there was no evidence that NED had any control over Foodmaster's premises or its display of knives or had any knowledge thereof. See *Sheehan* v. *El Johnan, Inc.*, 38 Mass. App. Ct. 975, 975-976 (1995) (inquiry is whether landlord controlled premises or knew of dangerous condition).

Finally, the defendant Foodmaster has argued that, even if one assumes that it breached its duty to the plaintiff in displaying knives without protective covers, the plaintiff has failed to produce evidence that her injuries were proximately caused by Foodmaster's breach. Foodmaster's argument rests on the ground that Huggins's attack was a superseding or intervening cause which broke the chain of causation. "Generally, the act of a third person in committing an intentional tort constitutes a superseding cause of harm to another resulting therefrom, even though the actor's conduct created a situation which afforded an opportunity to the third person to commit such a tort or a crime. However, liability will be imposed where the actor realized, or should have realized, the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit a crime." *Gidwani* v. *Wasserman*, 373 Mass. 162, 166 (1977). Here, for the very same reason that we determined that the foreseeability of harm posed a material issue of fact, we also are of the opinion that the issue of causation presents a material issue of fact which is best left to a jury.

In sum, we affirm the judgment in favor of NED and partial summary judgment in favor of Foodmaster based on a claim of

inadequate security but reverse the judgment in favor of Food-master on a claim of negligence in displaying knives without protective covers and remand this claim to the Superior Court for further proceedings.

*So ordered.*