Charles Northrup was in the parking lot of the Showcase theater in Woburn when he was suddenly stabbed by a person suffering from mental illness. Northrup,[3] and his wife and children, then brought this negligence action against the theater and its parent companies, alleging that their failure to provide police details on the theater premises proximately caused Northrup's injuries. A Superior Court judge allowed the defendants' motion for summary judgment, concluding that the stabbing was not reasonably foreseeable, and the plaintiffs appeal. We affirm.
Background. We summarize the undisputed facts, reserving certain details for later discussion.
1. The stabbing. Shortly before 10:00 P.M. on Tuesday, September 6, 2011, Northrup pulled into the theater parking lot with plans to meet a friend for a movie. After parking along the east side of the theater, Northrup sat in his vehicle with the engine running and smoked a cigarette. There was no security presence in the parking lot.[4]
Chantha Chau, who had parked his own vehicle in the adjacent hotel parking lot, approached Northrup and motioned through the window, indicating that he wanted a cigarette. As Northrup leaned to retrieve one, Chau suddenly stabbed him in the neck through the partially opened window. Northrup managed to escape out the front passenger door, but Chau pursued him and stabbed him again, this time in the stomach. Northrup sought refuge inside the theater, as Chau drove away in Northrup's vehicle. Surveillance video showed that the encounters inside and outside the vehicle lasted four and six seconds, respectively.
Several months later Chau was indicted on multiple charges relating to the stabbing and the theft of Northrup's vehicle. After a jury-waived trial, a Superior Court judge found Chau guilty of the charges. The judge found that, although the evidence was "overwhelming" that "Chau suffers from a mental disease or defect, either schizophrenia or a psychosis not otherwise specified," the Commonwealth had still met its burden of proving that he was criminally responsible for his actions.
2. Prior incidents at the theater. In the three years preceding the stabbing, there were thirty police reports arising from incidents at the theater, three of which resulted in arrests. Only one referred to violence against a person: a woman reported (in 2010) that she had been sexually assaulted inside the theater sometime in the 1970s. Otherwise, the majority of the reports involved property crimes -- primarily vehicle break-ins and thefts of personal items -- while the remainder involved public intoxication, domestic incidents (verbal disputes and incidental violation of a restraining order), discovery of a missing person, harassing telephone calls, a disturbance (youths breaking bottles), and indecent exposure.
The theater also generated seventy-one internal incident reports during the three-year look-back period. Many of those incidents concerned noncriminal activity, such as accidental injuries to patrons. Four reports referred to violence against a person; most pertinent is a report of an altercation that occurred in February of 2011 between two groups of juveniles.[5] As reflected in that report, a woman called the theater claiming that her sons attended a movie the previous night and had rocks thrown at them as they were leaving. She further claimed that a fight "ensued when kids surrounded [her sons'] car," punches were thrown, and "[o]ne of the kids ... pulled out [a] knife." The woman said her sons "were fine" and, when offered free movie passes, "seemed more excited about getting those than talking about her sons anymore."
Discussion. We review the allowance of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. See Belizaire v. Furr, 88 Mass. App. Ct. 299, 300 (2015). To prevail on a negligence claim, the plaintiffs must prove the existence of a legal duty owed to them by the defendants, a breach of that duty, and injury proximately caused by the breach. See Petrell v. Shaw, 453 Mass. 377, 385 (2009). Summary judgment for the defendants is appropriate if they can show that the plaintiffs have "no reasonable expectation of proving an essential element of [their] case at trial." Id. at 381.
"As a general rule, a landowner does not owe a duty to take affirmative steps to protect against dangerous or unlawful acts of third persons." Belizaire, 88 Mass. App. Ct. at 304, quoting from Luoni v. Berube, 431 Mass. 729, 731 (2000). See Whittaker v. Saraceno, 418 Mass. 196, 197 (1994) ("A landlord ... is not a guarantor of the safety of persons in a building's common area"). In "exceptional" circumstances, however, "[l]andlords may be liable for ignoring criminal activities that occur on [their] premises and were known or should have been known to them." Belizaire, 88 Mass. App. Ct. at 304, quoting from Griffiths v. Campbell, 425 Mass. 31, 34 (1997). Specifically, where, as here, the crime involves violence against a person, liability may attach "in the rare cases 'in which a person legally on the premises is attacked, and the owner or landlord knew of or should have known of both ... previous attacks ... and the potential for a recurrence based on a failure to take measures to make the premises safer.' " Ibid., quoting from Griffiths, 425 Mass. at 35. In other words the attack must have been reasonably foreseeable. See Toney v. Zarynoff's, Inc., 52 Mass. App. Ct. 554, 559 (2001) ("The plaintiffs bore the burden of proving that the risk of harm against which the landowner ... could have taken reasonable preventive steps was reasonably foreseeable").
While questions of foreseeability are ordinarily for the jury, a judge may decide them as a matter of law "where the harm suffered, although within the range of human experience, is sufficiently remote in everyday life as not to require special precautions for the protection of patrons." Westerback v. Harold F. LeClair Co., 50 Mass. App. Ct. 144, 146 (2000). "Notions about what should be foreseen ... are very much interwoven with our feelings about fair and just limits to legal responsibility." Whittaker, 418 Mass. at 198 (quotation omitted). The "outer limits" of reasonable foreseeability are therefore appropriate to resolve on summary judgment and, indeed, "have been long defined by judges." McLaughlin v. Vinios, 39 Mass. App. Ct. 5, 9 (1995).
Applying these principles here, we conclude that summary judgment was properly granted for the defendants. Though there is evidence in the record of nonviolent crimes, mainly property crimes, occurring on the theater premises, there is no evidence of prior stabbings or similar violent incidents. The only incident involving a deadly weapon -- the fight between the two groups of juveniles -- was never reported to the police, nor even was it reported to the theater on the night it occurred. In any event, we do not think that one alleged incident of a fight between youths supports a finding that the defendants should have reasonably foreseen the sudden and unprovoked act of violence committed by Chau.
Our conclusion comports with a settled line of case law. Particularly instructive is Luisi v. Foodmaster Supermkts., Inc., 50 Mass. App. Ct. 575, 576 (2000), in which the plaintiff brought a claim of inadequate security after she was stabbed by a mentally ill person while shopping at a grocery store. In support of her claim, the plaintiff proffered evidence of previous violent incidents inside the store -- fistfights between customers, a beating of the store manager by a mentally ill person, and a threat made to one of the cashiers -- as well as evidence that a number of armed robberies, property crimes, and assaults had occurred in the parking lot and vicinity of the mall in which the store was located. Id. at 577. Despite this proffered evidence, we held that the defendants were entitled to summary judgment because "no reasonable preventive measures taken by the defendants could have prevented the sudden and unprovoked attack on the plaintiff." Id. at 579.[6]
Other cases similarly hold that a landowner or landlord cannot be held liable for an attack by a third party absent evidence of prior similar incidents occurring on the premises. See Foley v. Boston Hous. Authy., 407 Mass. 640, 645 (1990) (attack by plaintiff's coworker not foreseeable where there was no evidence of threats made against plaintiff by other employees, though there was a history of threats made by tenants, and only other employee assault occurred two years prior and off employer's premises); Whittaker, 418 Mass. at 200 (attack inside office building not foreseeable where, despite incidents of property crime in parking lot, there was no evidence of crime in the building and "no evidence that physical attacks had occurred in the office park"); Griffiths, 425 Mass. at 35 (murder of police officer during drug raid not foreseeable even though landlord knew of drug activity on premises and prior drug raid, where "plaintiff did not offer any evidence of prior shootings"); Belizaire, 88 Mass. App. Ct. at 305 (shooting not foreseeable where, despite evidence of prior drug activity, "[t]here was no evidence of prior shootings or similar violent incidents on the property"). In each of these cases, the court resolved the foreseeability issue as a matter of law, concluding that the defendant was entitled either to summary judgment or to judgment notwithstanding the verdict.[7]
Unable to establish that similar violent incidents previously occurred at the theater, the plaintiffs seek to create a triable issue by pointing to evidence of prior criminal activity at the adjacent hotel and sports bar. It is undisputed, however, that the majority of the incidents occurred inside the hotel and bar, and, according to the Woburn police chief, the activity never "leaked" to the theater, which has a separate parking lot. Rather, he explained, "[t]he only place anything leaked ... [was] to the back of the parking lot of the hotel that was pretty self-contained." Given his testimony, and the absence of any other evidence showing that these incidents had any spillover effect, we have no basis to conclude that the defendants "should have known of" them. Griffiths, 425 Mass. at 35. Cf. Foley, 407 Mass. at 645 (prior assault did not support finding of foreseeability where it occurred "off the premises").
Even were we to conclude otherwise, the criminal activity at the hotel and bar would not create a triable issue on foreseeability. During the three-year look-back period, there were seventy-five reported incidents at the hotel and bar, sixteen resulting in arrests. The majority involved nonviolent offenses, primarily property crimes. There were about a dozen incidents that might be considered crimes against a person, most of which involved simple assault between parties known to each other or between bar patrons. Only two reports referred to the possible use of a dangerous weapon, and both were unsubstantiated.[8] Like the incidents at the theater, these incidents were too dissimilar in kind, or the reports too inconclusive, to support a finding that the defendants should have foreseen Chau's random act of violence.
The plaintiffs also claim that an affidavit they submitted from a security expert was enough to send the case to the jury.[9] We disagree. The expert opines, in conclusory terms, that the prior incidents at and around the theater -- most significantly, the fight between the two groups of juveniles -- made it "reasonable to have anticipated a violent event occurring on the property." This opinion runs counter to the cases discussed above, which again resolve foreseeability as a question of law. As the Supreme Judicial Court stated in Griffiths, 425 Mass. at 35-36, "[t]here must be limits to the scope or definition of reasonable foreseeability based on considerations of policy and pragmatic judgment" (quotation omitted). The court therefore held that the defendants were entitled to judgment notwithstanding the verdict despite testimony from the plaintiff's expert that the defendants violated their duty of care by not taking reasonable steps to prevent illegal activity on the premises. See id. at 32-33. Cf. Toney, 52 Mass. App. Ct. at 559 (stating in dicta that, although plaintiff "presented expert testimony that no reasonable security measures were in place at the time of the incident," "it [was] unlikely that the defendants could have reasonably anticipated ... or that any reasonable security measures would have prevented [the] precipitous and senseless act of violence"). We likewise conclude that the expert affidavit in this case did not preclude the entry of summary judgment for the defendants.
Finally, the plaintiffs argue that the existence or absence of prior crimes is not conclusive of the question of foreseeability. But while that is true as a general proposition, see Whittaker, 418 Mass. at 199, the plaintiffs have pointed to no other evidence -- such as an admission, see Mullins, 389 Mass. at 55, or actual knowledge that the assailant was armed, see Flood, 416 Mass. at 73 -- suggesting that Chau's crime was reasonably foreseeable. Instead, the plaintiffs claim that, irrespective of any prior crimes, the defendants should be held liable if they could have reasonably foreseen that eliminating police details would place theater patrons "at a greater risk of being victimized." This exceedingly broad formulation, which comes close to strict liability, finds no support in the case law. "The possibility of criminal conduct occurring is present in almost every aspect of daily life. In that sense the possibility of a violent attack is always able to be foreseen." Whittaker, 418 Mass. at 200. For this reason we should "not place the burden of all harm caused by random violent criminal conduct on the owner of the property where the harmful act occurred, without proof that the landowner knew or had reason to know of a threat to the safety of persons lawfully on the premises against which the landowner could have taken reasonable preventive steps." Ibid. Here, Chau's sudden and unprovoked attack on Northrup was not within the scope of foreseeable risk as a matter of law. The defendants were therefore entitled to summary judgment.[10]
Judgment affirmed.

Throughout this opinion "Northrup" refers to Charles Northrup.

In 2008 or 2009, the defendants decided to employ police details at the theater on Fridays, Saturdays, and Sundays only. Previously, police details were on the premises seven nights per week.

The other three incidents were as follows: (1) two female patrons were involved in a fistfight, causing a detail officer to intervene; (2) a group of girls harassed and threw a cellular telephone at another girl and were escorted out of the theater; and (3) a special needs child became out of control and pulled the hair of another child.

Although Luisi framed the issue as one of proximate cause, its analysis still turned on whether the attack was reasonably foreseeable. See 50 Mass. App. Ct. at 577-579. See also Whittaker, 418 Mass. at 198 ("The word 'foreseeable' has been used to define both the limits of a duty of care and the limits of proximate cause").

The cases cited by the plaintiffs are not to the contrary. Sharpe v. Peter Pan Bus Lines, Inc., 401 Mass. 788 (1988), concerned the higher duty of care applicable to common carriers, see ibr.US_Case_Law.Schema.Case_Body:v1">id. at 790, and the plaintiff there offered evidence that "[t]he [bus] terminal was in an active area for crimes against the person" and that "[t]here had been robberies ... and assaults in the terminal." Id. at 792. Similarly, Mullins v. Pine Manor College, 389 Mass. 47 (1983), concerned "the distinctive relationship between colleges and their students," ibr.US_Case_Law.Schema.Case_Body:v1">id. at 56, and there was evidence that the college had actually foreseen the risk of rape on the campus. See id. at 55. And in both Flood v. Southland Corp., 416 Mass. 62, 73 (1993), and Silva v. Showcase Cinemas Concessions, Inc., 736 F.2d 810, 812 (1st Cir. 1984), the defendants had actual knowledge of facts indicating that violence might be imminent, yet took no steps to prevent it. Even then, the court in Silva characterized the foreseeability question as "a very close one." 736 F.2d at 812.

In the first incident, which occurred in May of 2010, the injured party initially told police he had been stabbed, but later recanted and said he had fallen while walking home. The second incident, which occurred in August of 2010, involved the possible brandishing of a knife during a fight between parties who appeared to know each other; the police were unable to locate any victims or suspects.

The defendants moved to strike the affidavit as untimely, but the judge took no action on the motion, explaining that the affidavit "would not alter the outcome."

The plaintiffs' other miscellaneous contentions "have not been overlooked. We find nothing in them that requires discussion." Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).