NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-420

KELLY MANNION

vs.

JUSTICE RESOURCE INSTITUTE, INC. & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Kelly Mannion, appeals from the entry of summary judgment in favor of the defendants.  Mannion argues that the Superior Court judge erred in concluding that the defendants did not owe her a duty of care and that the defendants' conduct was not a legal cause of her injury.  For the reasons set forth below, we agree with Mannion, vacate the judgment, and remand the case for further proceedings consistent with this memorandum and order.

Background.  1.  Facts.  We summarize the essential facts, reserving certain details for later discussion.  Because Mannion appeals from the allowance of the defendants' motion for summary judgment, we summarize the evidence in the light most favorable

---

[1] Meredith Rapoza, as director of Meadowridge Academy, and John Doe.

to her.  See Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).

Defendant Justice Resource Institute, Inc. (JRI) operates Meadowridge Behavioral Health Centers, Inc. (Meadowridge), a residential group facility.  At all relevant times, defendant Meredith Rapoza was the director of Meadowridge.[2]  Families or agencies, such as the Department of Children and Families (DCF), refer minors to become students and residents of Meadowridge.  Students referred to Meadowridge exhibit varying mental health diagnoses, such as anxiety disorders, mood disorders, psychotic disorders, and posttraumatic stress disorder.  Students also often exhibit behavioral difficulties, including an inability to control emotions and aggressive or assaultive behavior.  To handle the risks posed by and to its students, Meadowridge operates as a restrictive site that controls who is approved to visit and requires all employees to complete safety training, including de-escalation training.  Meadowridge relies on its employees to control the safety of those on its campus, as it does not have security guards.  Individuals must show identification before entering the facility and are escorted inside.

_____

[2] The defendants made no argument that we should treat the defendants differently for the purposes of this appeal.  For that reason, we treat JRI's and Rapoza's knowledge and responsibilities as being the same.

At all relevant times, Mannion was employed as a social worker for DCF. As part of her employment, Mannion supervised Aya,[3] a student residing at Meadowridge and a minor in the permanent custody of DCF. Aya was assigned to Meadowridge by DCF because she "could not make it in a less restrictive environment" and because she had a history of assaultive behavior. As part of her duties, Mannion was required to visit Aya once a month. Communities for People, Inc. (CFP), a company tasked by DCF with ensuring that facilities such as Meadowridge were performing their functions adequately, was also required to visit with Aya on a quarterly basis.

On November 18, 2014, Mannion arrived at Meadowridge for a scheduled monthly visit with Aya that was to occur directly after a quarterly CFP meeting. Mannion planned to tell Aya during the meeting that Aya was not going to be permitted to visit her mother the following weekend because Aya had violated one of DCF's rules. Specifically, Aya had been given permission to visit her home, but instead had gone out of state to visit a friend. The defendants knew that Aya had violated the rule, as it was Meadowridge that had reported the incident to DCF, but there is no evidence that Mannion informed the defendants that

---

[3] A pseudonym.

she planned after the meeting to revoke Aya's permission to visit her mother.

The CFP meeting occurred in a conference room with Aya, Mannion, a CFP employee, Aya's clinician, and other Meadowridge staff.[4] Aya sat on one side of the table and Mannion on the other side of the table. During the CFP meeting, Aya was responsive and engaged in the conversation as each individual gave "a progress report" on Aya. At the conclusion of the CFP meeting, the staff who had given their progress reports departed, leaving in the room only Aya, Mannion, Aya's clinician, and the CFP employee. Mannion then told Aya that because she had broken the rules by visiting her friend instead of her mother, Mannion "was going to have to hold her accountable." When Mannion explained the consequences facing Aya, Aya became agitated. Aya warned Mannion that "you need to stop talking or I am going to jump over this table!" Mannion responded to Aya by saying "I am going to continue to hold you accountable." Aya then rose to her feet, threw an artificial planted pot at Mannion, came around the table, and attacked Mannion by grabbing her hair, slamming her head against the wall, and pulling her to the ground. The CFP employee and Aya's clinician quickly left the room to call for help. Within

---

[4] Mannion recalled five to seven people in the room but could not name them.

seconds, several people[5] came back to the conference room and were able to restrain Aya. As a result of the attack, Mannion suffered extensive injuries, her ability to perform her duties as a social worker was considerably impacted, and many of her cases had to be transferred to other social workers.

Mannion presented evidence that the defendants' employees and local law enforcement were often the targets of acts of aggressive behavior by Meadowridge students. Additionally, Mannion presented evidence that the defendants knew that Aya had anger management issues and a history of assaultive behavior.

2. <u>Procedural history</u>. Mannion filed a complaint on October 2, 2017, twice thereafter amended, alleging identical counts of negligence against JRI and Rapoza.[6] Mannion claimed that the defendants owed her a duty to ensure that Meadowridge was reasonably safe by providing adequate security, and that they had breached that duty. The defendants filed a motion for summary judgment. Mannion sought additional time to engage an expert and conduct depositions before the judge ruled on the defendants' motion. See Mass. R. Civ. P. 56 (f), 365 Mass. 824 (1974). The judge heard both parties' arguments during a

---

[5] Mannion stated that it took "more than five" people to get Aya off her.

[6] The second amended complaint also alleged negligence by employee John Doe, but he was dismissed from the suit under Superior Court Standing Order 1-88 (2020), and Mannion does not appeal that judgment.

hearing conducted over Zoom.  On February 1, 2022, the judge allowed the defendants' motion for summary judgment, concluding that, as a matter of law, the defendants did not owe Mannion a duty of care and did not cause Mannion's harm because Aya's attack was not reasonably foreseeable.  The judge also held that Mannion had failed to demonstrate sufficient cause to allow additional discovery.[7]

Discussion.  Mannion argues that the allowance of the defendants' motion for summary judgment was error.  "To prevail on a negligence claim, a plaintiff must prove that (1) the defendant owed the plaintiff a duty, (2) the defendant breached this duty, (3) damage to the plaintiff resulted, and (4) there was a causal relationship between the breach of the duty and the damage."  R.L. Currie Corp. v. East Coast Sand & Gravel, Inc., 93 Mass. App. Ct. 782, 784 (2018).  "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law."  Augat, Inc., 410 Mass. at 120.  See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).

---

[7] In her brief, Mannion argues that the judge erred in denying her the opportunity to complete several depositions and submit expert opinions before ruling on the summary judgment motion. Because we vacate the allowance of the motion on other grounds, we need not address this point.  Additional discovery may be had before trial, in the discretion of the court.

6

"The allowance of a motion for summary judgment is reviewed de novo." Brown v. Kalicki, 90 Mass. App. Ct. 534, 535 n.5 (2016), quoting White v. Hartigan, 464 Mass. 400, 406 (2013). We address the judge's rulings regarding both duty and causation because either could independently support summary judgment.

1. Duty. "[T]he existence or nonexistence of a duty is question of law, and is thus an appropriate subject of summary judgment." Jupin v. Kask, 447 Mass. 141, 146 (2006). The determination of duty must be made "by reference to existing social values and customs and appropriate social policy." Id. at 143, quoting Cremins v. Clancy, 415 Mass. 289, 292 (1993).

The owner or occupier of a property has a duty under the general principles of common-law negligence to "act as a reasonable [person] in maintaining [the] property in a reasonabl[y] safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk" [citation omitted]. Mounsey v. Ellard, 363 Mass. 693, 708 (1973). "As a general rule, a landowner does not owe a duty to take affirmative steps to protect against dangerous or unlawful acts of third persons." Luoni v. Berube, 431 Mass. 729, 731 (2000).

Nevertheless, a landowner is required "to exercise reasonable care in preventing injury to a lawful visitor caused by the reasonably foreseeable acts of another, whether those

7

acts are accidental, negligent, or intentional."  McKinney-Vareschi v. Paley, 42 Mass. App. Ct. 953, 954 (1997).  See Flood v. Southland Corp., 416 Mass. 62, 72 (1993); Carey v. New Yorker of Worcester, Inc., 355 Mass. 450, 452 (1969).  This duty is not premised on the existence of a "special relationship"; a landowner's relationship to a person lawfully visiting the premises is enough.[8]  See McKinney-Vareschi, supra at 954-955.  Liability may attach "in the rare cases 'in which a person legally on the premises is attacked, and the owner or landlord knew of or should have known of both the previous attacks and the potential for a recurrence based on a failure to take measures to make the premises safer.'"  Belizaire v. Furr, 88 Mass. App. Ct. 299, 304 (2015), quoting Griffiths v. Campbell, 425 Mass. 31, 35 (1997).

Viewing the facts in the light most favorable to Mannion, the defendants owed Mannion a duty.  The summary judgment record showed that the defendants knew of prior incidents of violence

---

[8] Earlier cases, describing the existence of this duty as "a well settled principle of law," were decided in the context of paying customers on business premises.  Rawson v. Massachusetts Operating Co., 328 Mass. 558, 558 (1952).  In Mounsey, supra at 707, however, the court determined we would "no longer follow the common law distinction between licensees and invitees and, instead, [would] create a common duty of reasonable care which the occupier owes to all lawful visitors."  Thus, in recognizing a duty to the plaintiff as a lawful visitor to a parking area in McKinney-Vareschi, supra at 954, the court did not discuss whether the plaintiff was a paying customer, invitee, or licensee.

8

by students at Meadowridge and of Aya's history of assaultive behavior and anger management issues. Because the defendants also knew or should have known of the potential for violence by students if measures to make the premises safer were not taken, the defendants had a duty to take affirmative steps to protect visitors like Mannion from foreseeable dangerous or unlawful acts by their students. Sound public policy also supports this limited holding, despite the general bar on liability of property owners due to actions of third parties, as any other conclusion would allow JRI to operate its facilities with careless disregard for the safety of providers required by their employment to be on the grounds. See Jupin, 447 Mass. at 150-154 (weighing costs associated with not recognizing duty against costs to landowner). The defendants are in a better position than visitors to take precautions against violent conduct by students; indeed, there is evidence that the defendants had already adopted some policies and taken some precautions to protect against such conduct. We note that a distinguishing factor with regard to reasonable foreseeability in this case is that the plaintiff here, Mannion, is someone known to the defendants and is among a class of visitors whom the defendants regularly allow into the facility to interact with their population of youth who suffer with behavioral issues and frequently experience violent outbursts. It is also significant

9

that the third party, Aya, was housed in the defendants' premises and was well known to them. This was not a random attack by a third-party criminal actor. The defendants were aware of the volatile nature of the residents and had a duty to exercise reasonable care to those whom it allowed inside. We note that whether the defendants acted negligently or not is not before us and will be left to the finder of fact.[9]

2. Causation. Because we conclude that the defendants owed Mannion a duty of care, we must also address whether, as a matter of law, a reasonable jury could find that the defendants' breach of that duty caused Mannion's harm. Summary judgment based on lack of causation is appropriate only where "a

_____

[9] Because we conclude that the defendants owed Mannion a common-law duty as a lawful visitor to the defendants' premises, we need not definitively resolve the validity of Mannion's other theories of duty. We observe, however, that her theory of a special relationship -- in particular, one based on the defendants having "charge of a person with dangerous propensities" -- was not adequately developed in her brief. Lev v. Beverly Enters.-Mass., Inc., 457 Mass. 234, 243 (2010), citing Restatement (Second) of Torts § 319 (1965). Her theory of a voluntarily assumed duty was not adequately supported by citation to any record evidence that she relied on any such undertaking. Her theory of a contractual duty of care to her as a DCF worker was unsupported by a citation to any provision of the defendants' contract with DCF that specifically established such a duty. Finally, her theory of a regulatory duty of care is not supported by the regulation she cites, 104 Code Mass. Regs. § 27.12(8)(b) (2021), though, at the time of these events, the effective version was 104 Code Mass. Regs. § 27.12(5)(b) (2006). The regulation, assuming arguendo that it governed the defendants' relationship with Aya, merely authorized the use of restraints in certain instances of threatened or actual violence; on its face it imposed no duty to use such restraints.

10

plaintiff has no reasonable expectation of proving that 'the injury to the plaintiff was a foreseeable result of the defendant's negligent conduct.'"  R.L. Currie Corp., 93 Mass. App. Ct. at 784, quoting Hebert v. Enos, 60 Mass. App. Ct. 817, 820-821 (2004).  A party "is bound to anticipate and provide against what usually happens and what is likely to happen, but is not bound in like manner to guard against what is . . . only remotely and slightly probable" (citation omitted).  Hebert, supra at 821.

We conclude that the summary judgment record does not establish, as a matter of law, that the injury to Mannion was not a reasonably foreseeable result of the lack of safety measures.  The record showed that the defendants' employees and local law enforcement were often the targets of acts of aggressive behavior by Meadowridge students.  Even if that were not the case, a jury could conclude that Meadowridge's main function, to house students with behavioral problems, would make aggressive conduct by students reasonably foreseeable.  The fact that the defendants were unaware of a particularized danger to Mannion from Aya does not negate a conclusion that harm from students to permitted visitors was reasonably foreseeable.  See Luisi v. Foodmaster Supermkts., Inc., 50 Mass. App. Ct. 575, 580 (2000) (material issue of fact regarding causation where defendant left knives uncovered even though defendant had no

11

knowledge of particularized danger posed by third party who used said knife to stab victim). We cannot say on this record that Mannion had no reasonable expectation of proving that her injury was a foreseeable result of the defendants' negligent conduct. The issue must be resolved by the finder of fact. See R.L. Currie Corp., 93 Mass. App. Ct. at 784.

Conclusion. Because there are genuine issues of material fact with respect to both duty and causation, we vacate the judgment and remand the case to the Superior Court for further proceedings consistent with this memorandum and order.

So ordered.

By the Court (Massing, Sacks & Walsh, JJ.[10]),

*Joseph F. Stanton*

Clerk

Entered: March 7, 2023.

---

[10] The panelists are listed in order of seniority.

12