NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-86

CANDACE LANGEVIN

vs.

DAWN THERESA BOOTH-DESMARAIS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On November 10, 2020, Candace Langevin (landlord) filed in the Housing Court a summary process complaint against her daughter, Dawn Booth-Desmarais (tenant).  The complaint alleged that the tenant failed to vacate after receiving a thirty-day notice to quit.  The tenant did not file an answer or raise any counterclaims.  Following a bench trial on February 4, 2021, the court entered judgment for the landlord for possession and stayed execution until June 1, 2021.  We affirm.

Background.  As reflected in the trial transcript and the judge's findings of fact, the parties did not dispute most of the material facts.  According to that evidence, the landlord owned a three bedroom, one bath ranch in Millbury, where she lived alone.  She was lonely following the death of her husband and asked the tenant and her children to live with her.

Converting a garage, the landlord added an additional bedroom and bathroom. The tenant and her minor children moved into the subject property in July 2017. Through a verbal agreement, the tenant paid $625 per month. Due to rising costs associated with the property, the parties agreed in 2019 to an increased rent of $775 per month. The tenant always remained current on the rent payments. The landlord split her time between the subject property and another property in Florida. By October 2019, the landlord lived in Florida and did not return to the subject property. After expenses continued to rise, the landlord could no longer "afford to keep the house in Millbury." On April 17, 2020, the landlord served on the tenant a notice to quit the premises by June 1, 2020. The tenant acknowledged receiving the written notice.

The parties disputed the nature and duration of the tenancy. The tenant claimed to have exclusive possession of the premises until 2025 when the tenant's daughter graduated from high school. According to the landlord, she expected to return to the premises from Florida in 2019 for Christmas, but claimed that the tenant told her that she "couldn't return to the house." The landlord acknowledged promising her grandchildren that they could live in the house until 2025 "if the money lasted and it hasn't lasted."

The judge prepared written findings of fact and conclusions of law, concluding:

> "The Court finds the parties entered into an oral tenancy at will agreement in July of 2017 for $625.00 in monthly rent with both parties being able to use the Premises. A new oral tenancy at will was established in Fall of 2019 for $775.00 in monthly rent. The Plaintiff properly terminated this oral tenancy at will and is entitled to possession."

The judge stayed execution until June 1, 2021, to enable the tenant's children to finish the academic year and to provide the tenant sufficient time to secure a new residence.

Discussion. On appeal, the tenant raises the following claims supported by numerous materials that were not presented at trial: (1) a signed lease allows her to remain on the property until 2025; (2) she agreed to the rent increase because the landlord agreed to allow her to remain on the property until 2025; (3) the property has been subject to extensive flooding; (4) her children deserve to stay in a secure and healthy home until the date agreed upon; (5) the residence contains extensive mold, mildew, and other microorganisms; (6) a massive sewer leak occurred on the premises in May 2021; (7) the landlord has taken no steps to clean up the sewer leak as required by the town; (8) the property has a massive rodent and insect problem; (9) the landlord has people harass the tenant by driving by and making hang up calls; (10) the landlord has sufficient money to maintain the property; (11) the tenant and her children have

3

suffered great medical and respiratory stress due to the condition of the property; (12) the tenant cannot afford to live anywhere but on the streets; and (13) the landlord was dishonest with the realtor about property defects. In addition to these claims, the tenant has included a prayer for relief that includes allowing the tenant to remain on the property until the summer of 2025, ordering the landlord to remedy all sanitary code violations, and awarding damages approaching $5 million.

With the exception of the claim about the duration of the tenancy, all the claims raised by the tenant are being asserted for the first time on appeal. Despite having opportunities to do so, the tenant did not file an answer or counterclaim in the Housing Court and did not introduce any exhibits at trial. See Rule 3 of the Uniform Summary Process Rules (1993) ("defendant shall . . . state in the answer any affirmative defenses which may be asserted"); Rule 5 of the Uniform Summary Process Rules (1980) ("right to counterclaim shall be deemed to be waived as to the pending action if such a claim is not filed with the answer . . . unless the court shall otherwise order on motion for cause shown"). By raising the claims for the first time on appeal, the tenant deprived the trial judge of the ability to review the claims and deprived the landlord of a fair opportunity to challenge the claims. "An issue not raised or argued below may not be argued for the first time on appeal."

4

Century Fire & Marine Ins. Corp. v. Bank of New England-Bristol County, N.A., 405 Mass. 420, 421 n.2 (1989). See Adjartey v. Central Div. of the Hous. Court Dep't, 481 Mass. 830, 855 (2019) ("tenant must generally assert any affirmative defenses and counterclaims in the answer"). The tenant's pro se status does not excuse the waiver of these claims because pro se litigants "are held to the same standards as litigants who are represented by counsel." Davis v. Tabachnick, 425 Mass. 1010, 1010, cert. denied, 522 U.S. 982 (1997). A pro se defendant is expected "to understand and set forth his or her legal rights, or risk waiving them." Adjartey, 481 Mass. at 855. Therefore, we do not consider these belated and new claims.

As to the claim about the duration of the tenancy, we discern no error in the judge's conclusion that the landlord was entitled to possession of the premises after properly terminating a tenancy at will. "When reviewing the decision of a trial judge in a summary process action, 'we accept [the judge's] findings of fact as true unless they are clearly erroneous,' but 'we scrutinize without deference the legal standard which the judge applied to the facts." Cambridge St. Realty, LLC v. Stewart, 481 Mass. 121, 123 (2018), quoting Andover Hous. Auth. v. Shkolnik, 443 Mass. 300, 306 (2005). Undisputed testimony at trial showed that the parties agreed to rent the premises for $625 per month and later agreed to $775

5

per month.  The parties stipulated that the tenant remained current on the agreed rent payments and had lawful possession of the premises before receiving the notice to quit.  Based upon this evidence, the judge could conclude that a tenancy at will existed.  See Mastrullo v. Ryan, 328 Mass. 621, 624 (1952) ("If there is nothing more than payment and acceptance, a tenancy at will is created"); Belizaire v. Furr, 88 Mass. App. Ct. 299, 303 (2015) ("There are two essential requirements for the creation of . . . a tenancy [at will]:  first, a contractual agreement between the landlord and the tenant, and second, that the tenant exclusively occupy the premises").  Because the tenant acknowledged that she received the notice to quit, the judge could further conclude that the landlord provided the proper notice and was entitled to possession of the premises.  See Williams v. Seder, 306 Mass. 134, 137 (1940) (tenancy at will "could be terminated by a written notice in accordance with [G. L. c. 186, § 12]").

Based upon the evidence presented, the judge properly declined to accept the tenant's claim that the landlord promised in 2017 to rent the premises to the tenant until 2025.  "Any promise involving real property is enforceable only if that promise meets the [writing] requirements of the Statue of Frauds, G. L. c. 259, § 1."  Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 709 (1992).  "An estate or interest in land

6

created without an instrument in writing signed by the grantor or by his attorney shall have the force and effect of an estate at will only, and no estate or interest in land shall be assigned, granted or surrendered unless by such writing or by operation of law." G. L. c. 183, § 3. The tenant claimed that the night before the trial she found a "standard residential lease" form that contained the terms of the parties' rental agreement. The judge asked the tenant, "what's the term of it?" Reading from the document, the tenant replied that the lease was to begin on September 1, 2017, "and shall end on blank." Upon questioning from the judge, the tenant acknowledged that the document also required a rental payment of $1,400. The tenant further acknowledged that the parties never performed according to the terms of the document. As the tenant put it, "that's what she wanted, and I was like yeah, we can't do that." Thus, the record supports the judge's conclusion that the landlord

properly terminated the tenancy at will and was entitled to possession of the premises.

<u>Judgment affirmed</u>.

By the Court (Neyman, Sacks &
  Hodgens, JJ.[1]),

*Joseph F. Stanton*

Clerk

Entered:  May 4, 2023.

---

[1] The panelists are listed in order of seniority.